FILED
JOHN P. HEHMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2014 APR 29  PM 1:19

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| THE OHIO STATE UNIVERSITY | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: |
| v. | : | Judge 2:14 C V   397 |
| | : | |
| TEESPRING, INC. | : | |
| | : | JUDGE WATSON |
| Defendant. | : | |
| | | MAGISTRATE JUDGE KING |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, CONTRIBUTORY TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, COUNTERFEITING AND VIOLATION OF RIGHT OF PUBLICITY

Plaintiff The Ohio State University ("Ohio State"), for its complaint against defendant Teespring, Inc. ("Teespring") ("Defendant"), states as follows:

### Nature of the Case

1.     This is an action for trademark infringement, contributory trademark infringement, unfair competition, passing off, counterfeiting under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), relating to the unlawful appropriation of Ohio State's registered and common law trademarks, and violation of the rights of publicity assigned to Ohio State by head football coach Urban F. Meyer ("Meyer") under O.R.C. § 2741, *et seq.*, by Defendant in its sale of t-shirts and other merchandise online.

2.     Plaintiff Ohio State is a public institution of higher education, with its main campus located in Columbus, Ohio, and regional campuses across the state.  The University is dedicated to undergraduate and graduate teaching and learning; research and innovation; and statewide, national, and international outreach and engagement.  Both undergraduate and graduate students also connect with the University and broader community through an array of leadership, service, athletic, artistic, musical, dramatic and other organizations and events.

3.      Upon information and belief, Defendant Teespring is a Delaware

Corporation, with a principal place of business at 3 Davol Square, Suite A350,

Providence, Rhode Island 02906.

4.      This court has jurisdiction over this matter under 15 U.S.C. § 1125 and 28 U.S.C.

§ 1338.  Venue is proper in this Court under 28 U.S.C. § 1391(b), as Ohio State's cause of action

arose and Ohio State is being injured in this judicial district, and because Defendant is doing

business in this forum and targeting customers in this forum to purchase its infringing and

counterfeit products.

**The Ohio State Trademarks**

5.      Established in 1870, The Ohio State University has developed into one of the

most well-respected institutions of higher learning in the country.

6.      For more than 140 years, Ohio State has been actively engaged in

providing undergraduate and graduate level educational courses and a broad array of

programming and events, including sports events, recreation programs, and artistic,

dramatic, and musical entertainment programming.  The University also operates a medical

center that has grown into one of the largest patient-care and medical-research centers in the

nation.  Ohio State licenses and markets various products and services, including publications,

clothing, and other merchandise using the Ohio State Trademarks.

7.      In connection with the activities and products described in the preceding

paragraphs, Ohio State is the owner of, among others, the following federally registered

trademarks:

    a.   "BUCKEYES" — registration number 1,152,683, registered April 28, 1981, to
        provide college sport exhibition events and recreation programs;

    b.   "BUCKEYES" — registration number 1,267,035, registered on February 14,
        1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic
        toys, foam toys and equipment sold as a unit for playing a stick ball game;
        clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats,
        aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs,

quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and folding seats for use by individuals in athletic stadiums and plaques; tote bags; pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles and key chains, all being made of precious metal; electric lamps; providing college level educational programs, sport exhibition events and recreation programs;

c.  BUCKEYE DESIGN — registration number 2,437,954, registered January 2, 2001 for use on decals and stickers;



d.  "OHIO STATE" — registration number 1,294,114, registered September 11, 1984 for providing college level educational programs, sport exhibition events, recreation programs, toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets, pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs, glasses, beverage container insulators, hassocks, bean bag leisure furniture, mirrors, and folding seats for use by individuals in athletic stadiums, tote bags, pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles, key chains and electric lamps;

e.  "OHIO STATE" — registration number 1,152,682, registered April 28, 1981 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

f.  "OSU" — registration number 1,121,595, registered July 3, 1979 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

g.  "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains; pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure furniture, plaques, mirrors and folding seats for use by individuals in athletic stadiums; tumblers, cups, mugs, glasses and beverage container insulators; blankets, pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, and equipment-namely, bats and balls sold as a unit for playing a stick ball game; and : providing college level educational programs, sport exhibition events and recreation programs;



h.      – registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.

i.      "SCARLET & GRAY" – registration number 3,173,656, registered November 21, 2006 for hats, shirts, and t-shirts

j.      "OHIO STATE" – registration no. 2,094,602, registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters



k.      Registration no. 4104956, registered February 28, 2012 for Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' apparel treated with fire and heat retardants, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Gloves for apparel; Infant wearable blankets; Scientific and technological apparel, namely, shirts, pants, jackets, footwear, hats and caps, uniforms; Viscous gel polymer sold as a component of finished custom cushioned footwear for non-orthopedic purposes and apparel; Wearable blankets in the nature of blankets with sleeves; Wearable garments and clothing, namely, shirts.

8.      Certified copies of the certificates of registration for each of these trademarks are attached herein as Exhibit A.

9.      The certificates of registration identified in the preceding paragraph are valid

and subsisting, and Ohio State has record title in the trademarks described above.

10. The certificates of registration are prima facie evidence of the validity of the registered trademarks, Ohio State's ownership of the registered trademarks, and Ohio State's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above. The registered marks set forth in paragraph 7(a) -- (h) and (j) are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

11. In addition, Ohio State owns common law trademarks in the distinctive use of its school colors, scarlet and gray, and in the use of the capital letter "O" in block text in conjunction with the school colors, the stripe pattern on the center of Ohio State's football helmet and in the cheer "O-H-I-O", among others. Indeed, Ohio State maintains a website exclusively devoted to the O-H-I-O cheer, performed by students, alumni and friends of Ohio State from places as far away as Toledo, Spain, Western Wall in Jerusalem, Melbourne, Australia and a game preserve in Kenya, http://www.osu.edu/O-H-I-O An example is the following performance of O-H-I-O in front of the Sydney, Australia opera house:



12. A simple search of the website www.youtube.com displays hundreds of examples

of people performing the O-H-I-O cheer, and all of them are associated entirely and exclusively with Plaintiff, The Ohio State University.

13.     A "Google" search of "O-H-I-O cheer" or "O-H-I-O chant" likewise turns up dozens of hits all referring to Plaintiff, while a search in Google "images" turns up more examples of uses of the "O-H-I-O" cheer, including on products licensed by Plaintiff, including printed matter, holiday ornaments, puzzles, wall hangings and the O-H-I-O licensed decal, depicted below:



14.     In connection with the promotion of its various academic, athletic, entertainment and philanthropic activities, Ohio State has also historically used, as a trademark, the Block O as well as a Block O with Buckeye Leaves:



15.     Ohio State's use of the Block O has been continuous since 1898 and use of the Block O with Buckeye Leaves trademark has been continuous since 1973 and the public now

associates the Block O trademarks solely as indicating origin in Ohio State.

16.     Since 1878 Ohio State's official school colors have been scarlet and gray with scarlet being the predominant color, and those colors have been used on all things Ohio State.

17.     Ohio  State has used the registered trademarks and the common law trademarks described above (collectively the "Ohio State Trademarks") continuously and exclusively for identification with Ohio State and its academic, athletic and entertainment activities. The Ohio State Trademarks and their respective reputation and goodwill have continuously grown and are now well known throughout the City of Columbus, the State of Ohio and the United States.

18.     Ohio State's athletic teams and students have been known as "Buckeyes" since at least as early as 1920.  Due to the long, extensive and continuous use of the term "Buckeye" in association with Ohio State teams, programs, and events, consumers now associate the term Buckeye with Ohio State.  When used in connection with Ohio State athletics or other Ohio State Trademarks (for example in the colors scarlet and gray) the term "Buckeye," as well as the other Ohio State Trademarks are strong and readily accepted by the public as hallmarks of Ohio State athletics.

19.     Ohio State licenses and markets many items using the trademarks "Buckeye", "Buckeyes", Block O, Block O with Buckeye Leaves, "Go  Bucks", the Ohio State Athletic Logo, "O-H-I-O", "OSU", the stripe pattern on the center of Ohio State's football helmet and the decal "Buckeye Leaf," which have been placed on the helmets of Ohio State football players for making an excellent play for more than 40 years.



20.      Ohio State's academic and athletic programs rank among the best in the nation. Ohio State's undergraduate program and graduate programs for law, medicine, business, engineering and education are all currently ranked among the top 40 schools in the nation in their respective areas by U.S. News & World Report.

21.      Ohio State alumni have an affinity for Ohio State that runs deep and these Buckeyes can be found in every corner of the country.  There are approximately 464,000 Ohio State alumni located in virtually every country throughout the world. When consumers throughout the nation (or world) hear the word "Buckeye" in connection college athletics, hear the words *Buckeye Battle Cry* or the fight song, or see the words "Buckeye Battle Cry", or the O-H-I-O cheer, they immediately associate that phrase as indicating origin with Ohio State and its athletic teams and band.

22.      In 2002, the Ohio State football team, the Buckeyes, won the NCAA football championship.  This was the seventh national football championship for the Buckeyes.  Only five other programs, in the history of collegiate football, have amassed more than seven national championships.

23.      In the 2006 — 2007 athletic year, Ohio State Buckeye teams appeared in both the NCAA Football National Championship and the NCAA Final Four and championship basketball games. This success again cemented the presence of the Ohio State marks on a national stage, making goods bearing the Ohio State marks even more sought after and desired. Not

surprisingly, 2006 — 2007 was a record year for licensing revenue for Ohio State, which was in excess of nine (9) million dollars.

24.     In 2008, the Buckeyes again played for the national championship of college football in the BCS National Championship Game.  In 2009, the Buckeyes played in the BCS-Fiesta Bowl, and in January 2010, the Buckeyes defeated Oregon in the BCS Rose Bowl.

25.     As a result of Ohio State's fame and its extensive use, advertising, and sale of goods and performance of athletic services bearing the Ohio State Trademarks, the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill.

26.     Ohio State approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing its marks, and its trade dress to protect the tradition, prestige and goodwill associated with these marks, and Ohio State makes systematic efforts to safeguard the quality and integrity of the Ohio State marks, and the public assumes that Ohio State has approved, sponsored or endorsed all products and services bearing its trademarks.

27.     For more than thirty (30) years, Ohio State has both used and licensed third parties to use the Ohio State Trademarks on various items and services, including clothing of all types, food products, restaurant services, internet websites, screen savers, athletic uniforms, calendars, novelties, books, household goods, toys, sporting goods, music, home furnishings, glassware, collectibles, pens and watches.

28.     Ohio State's licensing program has become the most profitable collegiate licensing program in the United States in the past five (5) years, generating royalties of more than $45 million. The past success of Ohio State's academic and athletic programs has resulted in extensive exposure of the Ohio State Trademarks to a national audience and has created a large demand for products and services bearing the Ohio State Trademarks throughout the United

States.

29.      In fact, Ohio State currently has approximately 500 authorized licensees for products using the Ohio State Trademarks on all types of clothing products, including shirts, food products and services, such as ice cream, breakfast cereals, popcorn snacks, pretzel snacks, tortilla chips, cinnamon cracker snacks, gourmet candies, hot dogs, cafés and restaurants, to computer equipment, such as screen savers, mouse pads, and wrist rests, hats, flags and banners.

30.      On November 28, 2011 Ohio State announced that it had hired famed former University of Florida football coach (and Ohio State alumnus) Urban Meyer as its head football coach with a six-year contract worth $ 4 million annually.  The hiring of Meyer was greeted with great excitement by Buckeye fans all over the world.

31.     In May of 2012, Urban Meyer assigned his rights of persona and trademark to Ohio State.  A copy of the Assignment is attached as Exhibit B.  On June 4, 2012, Ohio State applied for a federal trademark registration of the name "Urban Meyer" for "clothing items for men, women and children, namely, hats, caps, shirts, t-shirts, shorts, jackets and sweaters."   The application was assigned serial no. 85/642673. Meyer's assigned rights in his name, voice, signature, photograph, image, likeness, or distinctive appearance are referred to herein as the "Meyer Persona".

32.     Defendant is not and has not been licensed by Ohio State for any products or services.

**Defendant's Infringing Use and Counterfeiting of the Ohio State Trademarks**

33.      Defendant is in the business of printing and selling t-shirts with a wide variety of designs.  Upon information and belief, Defendant has online tools that permit its customers to create and upload infringing and counterfeiting designs, start a "campaign" on Defendant's website and set goals of the amount of shirts they wish to sell.  If the goal is met, Defendant manufactures the infringing and counterfeit t-shirts and ships them to the customer; if the goal

is not met, the infringing and counterfeit designs are not printed by Defendant.

34.     The designs printed by Defendant are submitted to it or created online using Defendant's design tools at Defendant's website, http://teespring.com/ .  Teespring also has a Facebook page, https://www.facebook.com/teespring and a Twitter page, https://twitter.com/teespring.  According to Teespring's website, "Just design a shirt in our easy designer, set a price, add a goal and start selling! Collect enough pre-orders and we'll print & ship directly to buyers, you keep the profit!"  According to an article in the January 3, 2013 *Forbes* magazine (copy attached as Exhibit C), Teespring was begun by Walker Williams and Evan Stites-Clayton who wanted to have a Rhode Island screen printer make t-shirts about a local bar. The screen printer wanted significant money up front to print 200 t-shirts. According to the article in Forbes, "they threw together a simple website with a basic premise: if they could get at least 200 people to reserve the tees, then they would organize and coordinate the printing and ship directly to buyers. If they couldn't reach their goal, no one would be charged and nothing would happen. It took them about 5 hours to code and build and once it went out it spread like wildfire with them selling over 400 t-shirts and pocketing $2,000 in profit."

35.     Defendant is well aware of the Ohio State Trademarks and Ohio State's use of the Ohio State Trademarks on clothing items.  Ohio State contacted Defendant on December 9, 2013 (copy attached as Exhibit D) and objected about a t-shirt design infringing on Ohio State's Trademarks, demanded that Defendant remove infringing items from the teespring.com website and police the website to not continuously offer, produce and sell t-shirts that are either infringing of or counterfeits of the Ohio State Trademarks. Alli Shea of Teespring responded to Ohio State via email on December 19, 2013 stating that she would take down t-shirts to which Ohio State objected (copy attached as Exhibit E). Additional infringing t-shirts continued to appear on Teespring's website and on January 29, 2014, Ohio State's outside counsel wrote to Teespring and attached a list of additional infringing t-shirt designs that were then being offered for sale on Teespring's website, demanding that Teespring both stop the activity and police its website to

prevent continued infringements of Ohio State Tradmarks in the future (copy attached as Exhibit F). On January 30, 2014, Alli Shea of Teespring responded and said that Teespring would stop future infringements and counterfeits of Ohio State Trademarks on its website (copy attached as Exhibit G). Teespring has not stopped the activity and Teespring continues to solicit orders for, manufacture, sell and ship infringing and counterfeit products using the Ohio State Trademarks.

36.     Below are examples of infringing merchandise using the Ohio State Trademarks and/or the Meyer Persona that have been displayed and offered for sale on the Teespring.com website, compared to t-shirts offered for sale by Ohio State licensees:



**Teespring.com website**



**Ohio State licensee**























37.     Defendant has also sold, offered for sale, distributed and/or advertised t-shirts that display counterfeits or colorable imitations of registered Ohio State trademarks.   Below are examples of counterfeit merchandise that have been displayed on the Teespring.com website, compared to t-shirts offered for sale by Ohio State licensees:

**Teespring.com website**          **Ohio State licensee**























































38.     Defendant's unauthorized use of the Ohio State Trademarks and/or the Meyer Persona is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution, sale and advertising activities of Ohio State and its licensees to the detriment of Ohio State.

## COUNT ONE
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

39.     Ohio State incorporates the allegations contained in paragraphs 1 through 38 as if fully restated herein.

40.     The commercial use of Ohio State's registered Ohio State Trademarks on t-shirts and other merchandise by Defendant as described above is a willful infringement of the registered Ohio State Trademarks, and such commercial use was with knowledge of and intended to trade off of Ohio State's prior rights to the Ohio State Trademarks.

41.     Defendant's solicitation, manufacture, displaying for sale, sale and shipment of infringing merchandise that uses the Ohio State Trademarks creates a likelihood of confusion as to the affiliation, connection, association or sponsorship, affiliation or endorsement

by Ohio State in an appreciable number of college athletics consumers and potential consumers.

42.     The Ohio State Trademarks, as described herein, are very strong in the context of licensed merchandise bearing the Ohio State Trademarks.

43.     The relatedness, or similarity, between Ohio State licensed products and Defendant's infringing merchandise point to a high likelihood of confusion.  Consumers interested in purchasing Ohio State apparel are likely to believe that Defendant's merchandise come from the same source, or are somehow connected with or licensed by Ohio State.

44.     The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm should Defendant's unauthorized offering to manufacture, manufacturing, selling and shipping of the infringing merchandise continue.

45.     Defendant's use of the Ohio State Trademarks on the infringing merchandise will continue unless enjoined by this Court.

46.     Ohio State is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

**COUNT TWO**
**UNFAIR COMPETITION AND PASSING OFF UNDER 15 U.S.C. § 1125(a)**

47.     Ohio State incorporates the allegations contained in paragraphs 1 through 46 as if fully restated herein.

48.     Defendant's offering to manufacture, manufacturing, selling and shipping of merchandise bearing the  Ohio State Trademarks on merchandise that competes directly with Ohio State's licensed apparel products, and Defendant's offering to manufacture, manufacturing, selling and shipping of merchandise bearing the Meyer Persona, will likely cause confusion, mistake or deception on the part of persons interested in purchasing Ohio State apparel  as to the origin, sponsorship or approval by Ohio State of the Defendant's infringing

merchandise in violation of 15 U.S.C. Section 1125(a).

49.     Upon information and belief, Defendant's unfair competition and passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill created and enjoyed by Ohio State for Defendant's profit.

50.     Ohio State's consumer goodwill is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm if Defendant's unfair competition and passing off as to the infringing merchandise is allowed to continue.

51.     Defendant's unfair competition and passing off will likely continue unless enjoined by this Court.

52.     Ohio State is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT THREE
## CONTRIBUTORY TRADEMARK INFRINGEMENT UNDER 15 U.S.C.
## §§ 1114 and 1125(a)

53.     Ohio State incorporates the allegations contained in paragraphs 1 through 52 as if fully restated herein.

54.     According to the website of Defendant, http://www.teespring.com, Teespring is a manufacturer, seller and shipper of the infringing and counterfeit designs created by unnamed third parties.

55.     In view of Plaintiff's objections to Defendant about the infringement and counterfeiting of the Ohio State Trademarks, Defendant is aware that those persons it encourages to use Teespring's online design tools are creating infringing and counterfeit designs which Defendant Teespring is manufacturing, offering to sell and selling.

56.     Defendant Teespring is liable for contributory trademark infringement through its actions of providing online tools for unknown third persons to create infringing and

counterfeit designs, and for Teespring's acts of manufacturing, displaying for sale, selling

and distributing t-shirts bearing such infringing and counterfeit designs.

## COUNT FOUR
## VIOLATION OF RIGHT OF PUBLICITY UNDER O.R.C. CHAPTER 2741

57.   Ohio State incorporates the allegations contained in paragraphs 1 through 56 as if fully restated herein.

58.   Urban Meyer is a living individual and a resident of the State of Ohio, and assigned his rights of publicity and persona to Ohio State pursuant to O.R.C. § 2741.04.

59.   The Meyer Persona has commercial value and Defendant is improperly using the Meyer Persona for a commercial purpose by using it on merchandise without authorization or consent.

60.   As the assignee of the Meyer Persona, Ohio State is being injured by Defendant's improper commercial use of the Meyer Persona.

61.   Ohio State is entitled to a permanent injunction against Defendant and all other remedies available under O.R.C. § 2741.07, including actual damages and profits derived from and attributable to the unauthorized use of the Meyer Persona for a commercial purpose, statutory damages, treble damages, costs and attorneys' fees.

## COUNT FIVE
## COUNTERFEITING UNDER 15 U.S.C. §1114

62.   Ohio State incorporates the allegations contained in paragraphs 1 through 61 as if fully restated herein.

63.   Defendant, without authorization from Ohio State, has offered to manufacture, manufactured, sold and shipped t-shirts, as described above, that display counterfeits or colorable imitations of federally registered Ohio State Trademarks on clothing products.

64.   Defendant's actions are intended to cause, have caused and are likely to continue

to cause confusion, mistake and deception among consumers, the public and Ohio State's

licensees as to whether Defendant's infringing and counterfeit merchandise originates from or is

affiliated with, sponsored by, licensed by or endorsed by Ohio State.

65.     Defendant has acted with knowledge of Ohio State's ownership of the Ohio State

Trademarks and with deliberate, willful intention to trade upon the consumer goodwill created

and enjoyed by Ohio State for Defendant's profit.

66.     Defendant's acts constitute trademark counterfeiting in violation of 15 U.S.C.

Sections 1114 & 1116.

67.     The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is

suffering and will continue to suffer irreparable harm should Defendant's unauthorized offering

to manufacture, manufacturing, selling and shipping of the counterfeit merchandise continue.

68.     Defendant's use of the Ohio State Trademarks on the counterfeit merchandise will

continue unless enjoined by this Court.

69.     Ohio State is entitled to a permanent injunction against Defendant, as

well as all other remedies available under the Lanham Act, including, but not limited to,

compensatory damages, statutory damages, treble damages, disgorgement of profits, and costs

and attorneys' fees.

**WHEREFORE**, Ohio State requests that the Court order:

1.  The issuance of a permanent injunction enjoining Defendant and its agents,
    servants, employees, successors, representatives and assigns, and all others in
    concert and privity with them from infringing, falsely designating the origin of
    the Ohio State Trademarks, and from passing off Defendant's products using
    Ohio State's Trademarks and/or the Meyer Persona, from using the Ohio State
    Trademarks and/or the Meyer Persona in commerce in any way, from injuring
    Ohio State's  and Urban Meyer's reputations, and from otherwise violating the
    rights of publicity in the Meyer Persona that have been assigned to Ohio State;

2.  That Defendant account to Ohio State for its profits, the actual damages suffered
    by Ohio State as a result Defendant's acts of infringement, unfair
    competition and passing off, and violation of the Meyer Persona, together

with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Ohio State's known rights;

3.      That Defendant surrenders all merchandise that bears any of the Ohio State Trademarks and/or the Meyer Persona for destruction;

4.      That Defendant pays statutory damages of $1,000,000 per counterfeit mark per type of product sold, offered for sale, or distributed in accordance with 15 U.S.C. Section 1117;

5.      That Defendant pays compensatory and treble damages to Ohio State;

6.      That Defendant disgorges all profits realized from the sale of merchandise that bears any of the Ohio State Trademarks and/or the Meyer Persona;

7.      That the Court determine this case to be "exceptional" and order Defendant pay Ohio State's attorneys' fees, together with the costs of this suit; and

8.      All other and further relief as may be just and equitable.


                         Respectfully submitted,


                         Michael DeWine
                         Ohio Attorney General


                         Joseph R. Dreitler, Trial Attorney (0012441)
                         Mary R. True   (0046880)
                         DREITLER TRUE LLC
                         137 East State Street
                         Columbus, OH  43215
                         (614) 545-6354 (telephone)
                         (614) 241-2169 (facsimile)
                         jdreitler@ustrademarklawyer.com
                         mtrue@ustrademarklawyer.com


                         Special Counsel for Plaintiff
                         The Ohio State University