IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE OHIO STATE UNIVERSITY,

        Plaintiff,

    v.

TEESPRING, INC.,

        Defendant.

Case No. 2:14CV397
Judge Watson
Magistrate Judge King

ORAL ARGUMENT REQUESTED

## DEFENDANT TEESPRING, INC.'S MOTION TO DISMISS OR TRANSFER VENUE

Defendant Teespring, Inc. ("Teespring") moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(7) or, in the alternative, to transfer this case to the United States District Court for the District of Rhode Island, pursuant to 28 U.S.C. § 1404. Defendant also moves to dismiss Count III of the Amended Complaint pursuant to Rule 12(b)(6). In support of its motion, Teespring respectfully submits the accompanying memorandum of law and Affidavit of Christopher Daft.

/s/James D. Colner
Craig M. Scott (Admitted *Pro Hac Vice*)
Anastasia A. Dubrovsky (Admitted *Pro Hac Vice*)
Scott & Bush Ltd.
One Turks Head Place, Fourth Floor
Providence, RI  02903
(401) 865-6035 Phone/(401) 865-6039 Fax
cscott@scottbushlaw.com
adubrovsky@scottbushlaw.com

James D. Colner                              (0012376)
Shumaker, Loop & Kendrick, LLP
41 South High Street, Suite 2400
Columbus, Ohio 43215
Phone: (614) 463-9441/Fax: (614) 463-1108
Email: jcolner@slk-law.com

Attorneys for Defendant Teespring, Inc.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## TEESPRING, INC.'S MOTION TO DISMISS OR TRANSFER VENUE

## I.     INTRODUCTION

In its two years of existence, Teespring, an innovative user-driven platform for the design and sale of custom shirts, has worked diligently to create mechanisms to identify promptly and remove allegedly infringing items from its site. Teespring has rejected and removed hundreds of potentially infringing campaigns, and scores of intellectual property owners have availed themselves of Teespring's notice-and-takedown procedures, including Plaintiff The Ohio State University ("OSU"). Teespring's proactive approach is consistent with settled precedent permitting such online marketplaces to flourish provided they undertake steps to combat alleged infringement. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010).

Under Federal Rule of Civil Procedure 12(b)(7), this Court should dismiss this action. The Court cannot grant OSU the relief it seeks without the joinder of "necessary" parties. Teespring did not create any shirt designs that OSU alleges infringe its rights. Nor did Teespring manufacture or print the shirts. The shirts are designed by sellers and printed by outside vendors. The sellers who created the allegedly infringing designs (the "Sellers") are necessary to the adjudication of this action, but cannot all be made parties hereto because the Court lacks personal jurisdiction over at least several of them.

If this Court determines that dismissal is not appropriate, the Court should alternatively transfer this case to the District of Rhode Island. The District of Rhode Island is the only jurisdiction that has personal jurisdiction over *all* of the Sellers, because the Sellers, who reside in various judicial districts, contracted in Rhode Island to defend and indemnify Teespring should their designs be accused of infringement. Teespring is headquartered in Rhode Island, its website is administered in Rhode Island and all material documents and witnesses are located in

Rhode Island.  This district, on the other hand, is merely the forum OSU chose because it is located here.   Balancing the factors concerning transfer under 28 U.S.C. § 1404, this Court should transfer this case to the District of Rhode Island.

In addition, Count III of the Amended Complaint for contributory infringement should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  OSU has not and cannot allege the facts necessary to state a claim that Teespring is liable for contributory infringement.  OSU alleges that Teespring had *general* knowledge that its platform could be used for infringing activity.  That allegation is insufficient to state a claim for contributory infringement.  *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013); *eBay*, 600 F.3d at 107.  Liability arises only where a party knew or had reason to know of *specific* instances of infringement and failed to act.  *Id.*  OSU has made no such allegation and cannot make any such allegation since Teespring responded fully to each particular claimed infringement by OSU.  Its contributory infringement claim should be dismissed.

## II.   <u>FACTS</u>[1]

### A.      <u>Teespring's Founding and Business Model</u>

Dubbed a "genius idea" representing "the future of custom apparel," two Brown University students founded Teespring in 2012.  (*See Huffington Post* article attached hereto as <u>Exhibit 1</u>; Am. Compl., ¶ 34 & <u>Exh. C</u>.)  Like online marketplaces such as eBay, Amazon Seller Marketplace and Craigslist before it, Teespring took an existing idea—custom screen printing— made it virtual and applied digital age concepts such as crowdfunding and social media

---

[1] While the Court may only consider the Amended Complaint in deciding Teespring's Motion to Dismiss Count III under Rule 12(b)(6) (*see Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)), in deciding a Rule 12(b)(7) motion, the Court may consider "affidavits or other relevant extra-pleading evidence."  *Reilly v. Meffe*, 2:13-CV-372, 2014 WL 1096144 (S.D. Ohio Mar. 19, 2014) (citation omitted); *see also* 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2013) ("To discharge [movant's] burden [under Rule 12(b)(7)], it may be necessary to present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence").

awareness to launch a unique and highly successful selling platform. (*See id.*) The way it works is that Sellers go to Teespring's website to upload their own designs or use Teespring's design tools to create their own shirts. (Am. Compl., ¶ 34.) Once a design is uploaded by a Seller, that Seller may advertise on social media to promote his or her shirts for sale. (*Id.*, ¶ 33.) If enough people pre-order shirts (based on a predetermined threshold the Seller sets), each purchaser is charged, and the shirt design and shipping information are sent to any one of a number of third-party screen printers to be printed and shipped directly to the buyers. (The Affidavit of Chris Daft, Teespring's Senior Vice President ("Daft Aff."), is attached hereto as Exhibit 2; Daft Aff., ¶ 5.) Teespring does not have in-house manufacturing or shipping capabilities. (*Id.*, ¶ 6.)

If a campaign does not receive the requisite number of pre-orders, the shirts are not printed and no one is charged. (Daft Aff., ¶ 7.) This risk-free approach is the primary appeal of Teespring. (*See, e.g.*, Exh. 1; *see also* the *TechCrunch* article attached hereto as Exhibit 3.) Similar to Kickstarter and other crowdfunding sites, a Teespring campaign starter is not required to make any upfront financial investment, which traditionally may have created a barrier to market entry. (Daft Aff., ¶ 7.) For this reason, Teespring has become popular among secondary schools, PTAs, charities and other non-profits looking to fundraise without committing scarce capital to merchandise that may not sell. (*See* Exhs. 1 and 2.) In fact, the most popular Teespring campaign to date resulted in 28,000 shirts sold to benefit the Wildland Firefighter Foundation. (Daft Aff., ¶ 8.) Several others successful campaigns have been launched to benefit One Fund Boston, established for victims of the Boston Marathon bombings, resulting in 12,801 units sold and over $230,000 donated, including Teespring's profits. (*Id.*)

Before any seller can launch a campaign, he or she must agree to Teespring's Terms of Service Agreement. (Daft Aff., ¶ 9.) Pursuant to the current Terms of Service Agreement,

anyone who creates a Teespring campaign attests that he or she is "the owner, or licensee, of all rights associated with any created or uploaded artwork or text, including but not limited to, the trademarks and copyrights that may be associated with said material." (*Id.*, ¶ 10.) Should this seller representation turn out to be inaccurate, Teespring expressly reserves the right to cancel any allegedly unauthorized and/or infringing campaign. (*Id.*) A seller further must agree "to defend, indemnify and hold Teespring and its affiliates harmless from and against any and all claims, damages, costs and expenses, including reasonable attorneys' fees, arising from or relating to [his or her] use of Teespring's site and services, [his or her] violation of this agreement, or [his or her] violation of any rights of another."[2] (*Id.*, ¶ 11.)

Teespring does not rely exclusively on seller representations and warranties to address allegedly infringing activity. Teespring has established internal protocols to identify and remove allegedly infringing campaigns and complaint intake and handling procedures. (Daft Aff., ¶ 12.) Such efforts include: (1) establishment and refinement of an increasingly robust intake filter to identify and suspend potentially infringing campaigns; (2) development of a special portal for intellectual property complaints, legal@teespring.com, with an expedited 24/7 review and response policy; (3) implementation of a formal, comprehensive complaint submission policy for the benefit of rights holders, located at http://teespring.com/about/terms; (4) strengthening of its Terms of Service to enable Teespring to release seller's contact information to intellectual property complainants, at Teespring's discretion, and to allow Teespring to suspend alleged recidivist infringers, temporarily or permanently; (5) overhaul of its cross-platform marketing process to ensure that potentially infringing campaigns are not advertised by Teespring on other

---

[2] As Teespring continues to refine and supplement its processes, it has revised its Terms of Service. While the quoted language represents the current version of the Terms of Service Agreement, each Seller agreed similarly not to violate any person's intellectual property rights and defend, indemnify and hold Teespring harmless should Teespring be accused of infringement arising out of the Seller's violation of anyone's rights. (The Terms of Service Agreement in place during the period relevant to the Amended Complaint is attached hereto as Exhibit 4.)

social media platforms; and (6) retention of experienced trademark and copyright counsel to provide intellectual property legal advice and counseling. (*Id.*) To date, Teespring's diligent efforts have resulted in hundreds of rejected, suspended and/or cancelled campaigns. (*Id.*, ¶ 13.)

**B.      OSU Accuses Teespring of Infringement and Counterfeiting**

On December 9, 2013, OSU first contacted Teespring. (Am. Compl, ¶ 35.) At that time, OSU identified an apparent Facebook advertisement with a shirt using the so-called "Block O" design mark, as well as other alleged OSU "indicia," that OSU claimed infringed its trademark rights. (Am. Compl, ¶ 35 & Exh. D.) It was not clear from OSU's letter whether the ad referred to a Teespring campaign. Teespring, in an effort to address OSU's concerns, requested that OSU provide the uniform resource locator ("URL") of the allegedly infringing campaign. Consistent with its protocols for addressing infringement allegations, Teespring also responded unequivocally that it would "remove the campaign" upon receipt of the URL that would identify the specific location of the campaign on the Teespring site. (Am. Compl., ¶ 35 & Exh. E.) In response, OSU acknowledged that the "t-shirt offer appears to have been taken down." (*Id.*) OSU never contacted Teespring further concerning the specific purported Teespring campaign from December, 2013. (Daft Aff., ¶ 14.)

**C.      Teespring Cooperates with OSU and Removes Allegedly Infringing Campaigns**

On January 29, 2014, OSU identified nine allegedly infringing campaigns. (Am. Compl., ¶ 35 & Exh. F.) Teespring responded less than 24 hours later to OSU's January 29, 2014 demand letter as follows:

> Thank you for reaching out – I've removed the campaigns you linked as per your request. To date, we've rejected several hundred campaigns on behalf of OSU University. We will alert our content approval team of OSU's additional trademarks going forward.

(Am. Compl., ¶ 35 & <u>Exh</u>. <u>G</u>.)  OSU appeared satisfied with Teespring's actions.  After their January, 2014 exchange, Teespring never heard from OSU again concerning the nine complained-of campaigns.  (Daft Aff., ¶ 15.)   Nor has OSU to date submitted any additional complaints or inquiries concerning any other campaigns.  (*Id*.)

III.  **ARGUMENT**

A.  **This Action Should be Dismissed for Failure to Join Indispensable Parties**

1.  **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(7), dismissal is appropriate where a plaintiff has failed to join a party under Rule 19.  Rule 19 provides that a party must be joined to an action if that party is necessary to the litigation and joinder will not destroy subject matter jurisdiction.  Fed.R.Civ.P. 19(a).  A party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action" such that, without the person's involvement, he may be unable to protect his interest or suffer inconsistent obligations.  *Id.*  A necessary party shall be joined unless joinder is not feasible.  *Thornton & Roshon Properties, Inc. v. Taylor Bldg. Products, Inc.*, 2:13-CV-00309, 2013 WL 6255595 (S.D. Ohio Dec. 4, 2013).

"[T]he resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three step process." *Keweenaw Bay Indian Cmty. v. State,* 11 F.2d 1341, 1345 (6th Cir.1993) (citations omitted); *see also Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).  First, the court must determine whether the party is a necessary one under the Rule 19(a) rubric set forth above. *Laethem Equipment Co. v. Deere & Co.,* 485 Fed. Appx 39, 43 (6th Cir. 2012); *see also Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.,* 181 F.3d 759, 763–64 (6th Cir.1999). "If the party is

6

deemed necessary for the reasons enumerated in Rule 19(a), the court must next consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction." *PaineWebber Inc. v. Cohen,* 276 F.3d 197, 200 (6th Cir. 2001) (citing *Keweenaw Bay Indian Cmty,* 11 F.3d at 1345–46). "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Glancy*, 373 F.3d at 666. In sum, dismissal for failure to join an "indispensable" party is warranted where: "(1) it is necessary, (2) its joinder *cannot* be effected, and (3) the court determines that it will *dismiss the pending case* rather than proceed in the case without the absentee." *Id.* (quoting 4 *Moore's Federal Practice* § 19.02[3][c], at 19–22).

### 2. <u>The Sellers are Necessary Parties to This Action</u>

A necessary party under Federal Rule of Civil Procedure 19(a) is a person: (1) in whose absence complete relief cannot be accorded among those already parties; or (2) who claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may impair or impede the person's ability to protect that interest or leave parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Reyna Capital Corp. v. Millennium Leasing & Fin. Servs., Inc.*, 494 F. Supp. 2d 709, 713 (S.D. Ohio 2006).

Here, OSU fundamentally seeks relief from the Sellers, not Teespring. Therefore, complete relief cannot be accorded between OSU and Teespring without the presence of the Sellers. Moreover, in the absence of the Sellers, who have agreed to defend and indemnify Teespring, there is a high risk of incurring double, multiple or otherwise inconsistent rulings and

obligations.  Each provides an independent reason why the Sellers are necessary parties under Federal Rule of Civil Procedure 19(a).

### a.    This Court cannot accord complete relief between OSU and Teespring

Teespring neither created the allegedly infringing designs nor manufactured any products bearing the allegedly infringing designs.  (Daft Aff., ¶ 16.)  All allegedly infringing designs were uploaded to Teespring's platform by the Sellers.  (*Id.*, ¶ 17.)  Teespring did not direct or control any of the Sellers.  (*Id.*, ¶ 18.)  Teespring did not generate or pre-approve any of the allegedly infringing designs, and Teespring has never had possession of any shirts bearing the allegedly infringing designs.  (*Id.*, ¶ 19.)  Teespring acts as an online marketplace facilitating merchandise sales between willing buyers and sellers.  (*Id.*, ¶ 20.)  Teespring's only role in the process is to provide the platform for Sellers to design, market and sell products without upfront investment and to facilitate production and shipment of successful campaigns through outside printers.  (*Id.*)

Nevertheless, OSU seeks a broad injunction enjoining Teespring "and its agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them" from infringing OSU's trademarks.  The injunction OSU seeks is not tethered to any specific known infringements, but rather is a broad, blanket injunction, enforceable by contempt, for any present or future infringements posted on Teespring's website.  Existing case law does not support such an injunction against Teespring,[3] and the Court cannot enjoin the Sellers, who would be responsible for any proven infringements, unless they are parties.  *Cf. Glancy*, 373 F.3d 656, 671 (6th Cir. 2004) (finding nonparty "necessary" where entry of injunction would impair nonparty's rights).  Presumably, OSU will argue that they are in "concert and privity" with

---

[3] *See Coach, Inc.*, 717 F.3d at 504 (citing *eBay Inc.*, 600 F.3d at 107-08) (general knowledge of infringing or counterfeit sales on a website is not sufficient; the accused infringer must have contemporary knowledge of particular listings to support infringement liability).

Teespring, but that argument fails. *See Adcor Indus., Inc. v. Bevcorp*, LLC, 411 F. Supp. 2d 778, 795 (N.D. Ohio 2005) *aff'd*, 252 F. App'x 55 (6th Cir. 2007).[4]  Accordingly, the entry of the injunction OSU seeks would impose upon Teespring a judicially-enforced obligation not to infringe OSU's trademarks without the equivalent legal means to prevent infringement by the Sellers.

Likewise, this Court cannot grant OSU's additional requested relief.  Among various other forms of compensatory and equitable relief, OSU seeks a surrender of all merchandise bearing OSU's trademarks.  Teespring does not possess any merchandise nor has it ever possessed any merchandise.  Thus, this Court cannot order Teespring to surrender any merchandise, which is entirely within the possession of individuals and entities that are not parties to this action.

> **b.     Disposition of this action in the Sellers' absence would impair and impede their ability to protect their interests and leave Teespring subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations**

There is a high risk of "incurring double, multiple or otherwise inconsistent" rulings and obligations without the Sellers being made parties hereto.  *See Reyna Capital Corp. v. Millennium Leasing & Fin. Servs., Inc.*, 494 F. Supp. 2d 709, 713 (S.D. Ohio 2006).  Each Seller is party to Teespring's Terms of Use Agreement entered into and governed by Rhode Island law wherein each Seller represented to Teespring that he or she would limit his or her usage of third party content only to the extent he or she is authorized to use it.  OSU alleges that none of allegedly infringing designs was authorized.  The Sellers have an obligation to defend and

---

[4] There is no privity here, as the relationship between Teespring and the Sellers do not meet the Court's definition of privity: "privity exists when a third party's interests are so intertwined with a named party's interests that it is fair under the circumstances to hold the third party bound by the judgment against the named party. Privity can arise if a third party had control over the litigation conducted by the named party, if his interests were adequately represented by the named party, or if some other implied or in-fact representation or alignment of interests existed between the parties…The relevant inquiry is whether the person sought to be bound was directly involved in shaping the outcome of the prior litigation such that his interests were adequately represented." 411 F. Supp. 2d at 795.

indemnify Teespring under the Terms of Use Agreement. If this Court determines that the Sellers are not necessary parties, Teespring would have to litigate separately to enforce its contractual rights against the Sellers.

### 3. Teespring's Sellers Cannot be Joined in this Action

This Court does not have personal jurisdiction over all of the Sellers. "[I]n the absence of personal jurisdiction…the party cannot properly be brought before the court." *Keweenaw Bay*, 11 F.3d at 1345-46. The Sellers are far-flung, residing in several states, including Tennessee, Arizona, California and Minnesota. (Daft Aff., ¶ 22.) All of Teespring's interactions with the Sellers have their nexus in Rhode Island—i.e., the formation of the Terms of Use Agreement and establishment and use of an account on Teespring's Rhode Island-based website. (*Id*.) Even if this Court has jurisdiction over some of the Sellers, others cannot be joined in this case. Because this Court lacks personal jurisdiction of *all* "necessary" parties, the Sellers cannot be entirely joined in this action.

### 4. The Court Should Dismiss the Case Rather Than Proceed Without Teespring's Necessary Sellers

Where joinder is not feasible, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Glancy*, 373 F.3d at 666. Here, all Rule 19(b) factors favor dismissal of this action. Under Federal Rule of Civil Procedure 19(b), this Court should consider: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Teespring and the Sellers would be prejudiced by the judgment OSU seeks, and that prejudice cannot be lessened or avoided by protective provisions, shaping the relief or other measures. As creators of the allegedly infringing designs, the Sellers are the directly responsible parties should OSU prove infringement. The Sellers also represented to Teespring that they were authorized to use the designs and agreed to defend and indemnify Teespring from any violation of the Terms of Use Agreement. Without the Sellers' presence in this litigation, there is no reasonable means to adjudicate fully this case. The Sellers may, for example, have substantial defenses that Teespring is unaware of and thus cannot assert on their behalf. The Sellers also have an obligation to defend, in addition to indemnify. As discussed above, Teespring would be prejudiced by their absence inasmuch as it could create inconsistent results and duplicative litigation.

OSU would have an adequate remedy if this action were dismissed for nonjoinder. OSU has asserted federal causes of action (and state claims that the federal courts may exercise supplemental jurisdiction over) that may be brought in the District of Rhode Island. Teespring is subject to personal jurisdiction in the District of Rhode Island, as are the Sellers. Specifically, the Terms of Use Agreement is governed by Rhode Island law and was formed in Rhode Island. The Sellers opened Seller accounts on Teespring's Rhode Island-administered website and uploaded the allegedly infringing designs on the same website. In light of all material factors, this Court should dismiss this case for failure to join dispensable parties rather than proceed without the necessary Sellers.

**B.** **If this Court Declines to Dismiss this Action, it Should Transfer Venue to the District of Rhode Island**

    **1.** **Legal Standard**

Pursuant to 28 U.S.C.A. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The "threshold consideration" under § 1404(a) is whether the action "might have been brought" in the transferee court. *Kay v. Nat'l City Mortgage Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). This Court has determined that a case "might have been brought" in a transferee court if (a) such court has subject matter jurisdiction over the matter; (b) venue is proper; and (c) defendant is amenable to process issuing out of the transferee court. *Id.* (citing *SKY Technology Partners v. Midwest Research Institute,* 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000)). As discussed below, all three elements of this threshold consideration are met here.

Once this Court determines that the case could have been brought in the transferee court, this Court must decide whether transfer is justified under the balance of the language of § 1404(a). *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). Specifically, this Court must analyze whether transfer is justified for "the convenience of parties and witnesses" and "in the interest of justice." *Id.* When considering a transfer, courts are to consider both the private interests of the parties and the public's interest in the administration of justice. *Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947)). The parties' private interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditions and inexpensive.

*Id.* (quoting *Gulf Oil,* 330 U.S. at 508). The public interests include:

> Docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.

*Id.* The Court has also considered additional factors such as "the nature of the suit; the place of the events involved; ... and the residence of the parties." *Id.* (citing *SKY Technology,* 125 F. Supp. 2d at 291).

The decision whether to grant a change of venue lies within the sound discretion of this court. *Abercrombie & Fitch Co. v. Ace European Grp., Ltd.*, 2:11-CV-1114, 2012 WL 2995171, at *5 (S.D. Ohio July 23, 2012) (noting the Court has "broad discretion" in deciding a § 1404 motion); *see also Kay*, 494 F. Supp. 2d at 850; *Dayton Superior Corp.*, 288 F.R.D. at 166; *Hanning v. New England Mut. Life Ins. Co.,* 710 F. Supp. 213, 215 (S.D. Ohio 1989). In making that determination, this Court need not find that this district is not a proper forum; rather, the decision comes down to whether there exists a *better* forum. *SKY Technology*, 125 F. Supp. 2d at 290–91 ("Even in cases where venue is proper, a court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties.") (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980)). Here, Rhode Island is a better venue for this dispute. Not only do the relevant factors weigh heavily in favor of Rhode Island, but it is also the only forum where the district court may exercise personal jurisdiction over all parties necessary for the complete adjudication of the Plaintiff's claims, including third party claims. Accordingly, this Court should transfer venue of this case to the District of Rhode Island.

2. **This Action "Might Have Been Brought" in the District of Rhode Island**

### a. The District of Rhode Island has subject matter jurisdiction over this action

OSU asserts federal claims under the Lanham Act. Pursuant to 15 U.S.C. § 1125 and 28 U.S.C. § 1338, the District of Rhode Island equally has subject matter jurisdiction over OSU's claims as this Court has. Moreover, both this Court and the District of Rhode Island have supplemental jurisdiction over OSU's state law claims. *See* 28 U.S.C. § 1367.

### b. Venue is proper in the District of Rhode Island

Pursuant to 28 U.S.C. § 1391, venue is proper in the District of Rhode Island. Teespring is headquartered in the District of Rhode Island and is subject to the Court's personal jurisdiction in Rhode Island. Moreover, a substantial part of the events or omissions giving rise to OSU's claim occurred in Rhode Island.

### c. Teespring is amenable to process issuing out of the District of Rhode Island

Bringing this motion is sufficient to show that Teespring is amenable to process issuing out of the District of Rhode Island. *See Kay*, 494 F. Supp. 2d at 849. Because this case meets all three elements, this is a case that "might have been brought" in the District of Rhode Island.

### 3. Transfer to the District of Rhode Island is Warranted under § 1404

### a. The parties' private interests favor the District of Rhode Island

In weighing the private interests in this motion to transfer venue, this Court should consider: (1) the relative ease of access to sources of proof, including the location of documentary evidence; (2) the convenience and proximity of witnesses, including the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; and (3) the nature and materiality of testimony to be elicited from witnesses who must be transported. *See Shively v. Papa John's Int'l, Inc.*, 2:08-CV-221,

2008 WL 2943342, at *2 (S.D. Ohio July 30, 2008). Although courts typically give deference to the plaintiff's choice of forum, where, as here, the chosen forum "has no connection with the matter in controversy," the Court affords it less deference. *See Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, 2:12-CV-263, 2012 WL 4343103, at *2 (S.D. Ohio Sept. 21, 2012) (quoting *St. Joseph Solutions, LLC v. Microtek Medal, Inc.,* No. 11–cv–388, 2011 WL 5914010, at *7 (S.D. Ohio Nov. 28, 2011)); *see also U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.,* No. 10–cv–383, 2011 WL 127852, at *2 (N.D. Ohio Jan.14, 2011) (affording less weight to plaintiff's choice of forum where "the vast majority of operative facts giving rise to the lawsuit took place outside of Ohio"); *JFE Steel Corp. v. ICI Americas, Inc.,* No. 06–cv–2386, 2008 WL 4449080, at *1 (N.D. Ohio Sept. 30, 2008) ("Where plaintiff's choice of forum bears no relationship to the case, too much deference or weight given to that choice creates an unnecessary risk of forum shopping.").

Here, the facts giving rise to OSU's claims occurred in Rhode Island, not Ohio, and the sources of proof, including material witnesses, are located primarily in Rhode Island and elsewhere outside Ohio. Teespring is headquartered in Rhode Island. (Daft Aff., ¶ 2.) Its employees are based in Rhode Island, and its website is administered in Rhode Island. (*Id.*) Because its website is administered in Rhode Island, the numerous protocols and procedures, described above, that it has set up to identify and combat infringement are managed in Rhode Island. (*Id.*) As for the specific acts of infringement complained of, the Sellers established accounts on Teespring's Rhode Island-administered website, and entered into Terms of Use Agreements formed in Rhode Island under Rhode Island law. (*Id.*, ¶¶ 21-22.) The Sellers thereafter uploaded and created their allegedly infringing designs on Teespring's Rhode Island-administered website. (*Id.*)

Given the foregoing, the vast majority of the documents and witnesses are located in Rhode Island, which weighs heavily in favor of transfer to Rhode Island. "The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991). As the Court can glean from the allegations of the Amended Complaint, this case will focus substantially on the adequacy of Teespring's response to known alleged infringements. Teespring's Allison Shea was the point person responding to OSU's identification of specific allegedly infringing campaigns. (Am. Compl., ¶ 35 & <u>Exh</u>. <u>G</u>.) She has knowledge of and will testify concerning Teespring's response to OSU's allegations. She works in Rhode Island, as does the rest of the management team tasked with administering the website and managing infringement complaints. (Daft Aff., ¶ 3.)

> **b.** **The public interests favor the District of Rhode Island or are neutral**

The public interests to be considered in deciding a motion to transfer venue under § 1404(a) include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour*, 211 F. Supp. 2d at 945, citing *Gulf Oil*, 330 U.S. at 508. Here, the factor most favoring transfer is the burden of trial to the Southern District of Ohio, which has no relation to the cause of action. As discussed above, the activities giving rise to OSU's claims occurred outside of Ohio and primarily in Rhode Island. Although OSU likely will argue that the impact of the alleged infringement was felt in Ohio, courts often discount the site of the injury on its own in analogous jurisdictional questions because a plaintiff will always feel the effects of an injury in its home state. *See, e.g., Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F. Supp. 2d 929, 937 (E.D. Mich. 2011).

The remaining public factors are roughly neutral. According to the U.S. federal judiciary's website (www.uscourts.gov), docket congestion and disposition times are generally the same in this district and the District of Rhode Island, and as federal courts interpreting federal law, the districts are both familiar with controlling law. Finally, there is no "public affected" in this case. Unlike, for example, antitrust, FDA or FCC cases, the public interest in the present case is low. Accordingly, on balance, the public factors favor transfer.

### c. Other material factors favor the District of Rhode Island

This Court may also consider additional factors when evaluating a motion to transfer venue. *See Dayton Superior Corp.*, 288 F.R.D. at 165. Here, as discussed in the prior section, the District of Rhode Island is the only Court that can exercise jurisdiction over all of the Sellers. Even if this Court determines that the Sellers are not "necessary" or "indispensable" parties such that dismissal is warranted, transfer is appropriate for Teespring to avoid additional litigation to enforce the Sellers' obligations to defend and indemnify Teespring. Transfer would thus be the most efficient manner to dispose of all material issues arising out of OSU's infringement and counterfeiting allegations. This Court should exercise its discretion to transfer this action to the District of Rhode Island to the extent it denies dismissal.

### C. This Court Should Dismiss Count III Because OSU Has Failed to Plead a Cause of Action for Contributory Infringement

#### 1. Legal Standard

When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all

well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679. As a general rule, when ruling on a Rule 12(b)(6) motion to dismiss, a district court may not consider matters outside the pleadings. *Winget*, 537 F.3d at 576 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001)). A district court may, however, consider "'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

OSU has failed to state a claim for contributory infringement. To state a claim for contributory infringement, a plaintiff must allege facts sufficient to demonstrate, if proven, that the defendant: (1) "*intentionally* induces another to infringe a trademark;" or (2) "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Coach, Inc.*, 717 F.3d at 503 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982)). In the specific case of a service provider such as Teespring, for contributory trademark infringement liability to lie under the *Inwood* test, the service provider "must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *eBay Inc.*, 600 F.3d at 107. OSU's complaint fails to allege facts to state a claim for contributory infringement under that framework.

The *eBay* case is instructive. Tiffany became aware sometime before 2004 that counterfeit Tiffany merchandise was being sold on eBay and sued for direct and contributory

infringement, among other claims.  Through various buying programs, Tiffany determined that more than 75% of all Tiffany merchandise sold on eBay was counterfeit.  Although the Court ultimately found the evidence flawed, it nevertheless found that a "significant portion of the 'Tiffany' sterling silver jewelry listed on the eBay website ... was counterfeit."  600 F.3d at 98. The Court further found that eBay generated substantial revenue from the sale of purported Tiffany products, including counterfeits.  For its part, eBay presented substantial evidence of anti-fraud and anti-counterfeiting measures it undertook over the years to combat the sale of counterfeit merchandise, including notice-and-takedown procedures, leading the Court to conclude that "eBay consistently took steps to improve its technology and develop anti-fraud measures as such measures became technologically feasible and reasonably available."  600 F.3d at 100.

The Second Circuit held that, even though eBay could not prevent all counterfeiting and ultimately profited from the sale of counterfeit items, eBay was neither directly or contributorily liable for trademark infringement.  In so holding, the Second Circuit agreed with the district court that, for contributory infringement to lie, "Tiffany would have to show that eBay 'knew or had reason to know of specific instances of actual infringement' beyond those that it addressed upon learning of them."  *Id*. at 107.   The Court further expressly rejected Tiffany's proposed test: "whether all of the knowledge, when taken together, puts [eBay] on notice that there is a substantial problem of trademark infringement. If so and if it fails to act, [eBay] is liable for contributory trademark infringement."  *Id*.

OSU failed to plead contributory infringement as required by *Inwood* and its progeny and instead pled squarely within the Second Circuit-rejected Tiffany rule.  OSU points to specific examples of allegedly infringing items "that have been displayed and offered for sale," but fails

to allege that *any* such specific campaigns *continued after notice to Teespring*. (Am. Compl., ¶ 36.) Instead, OSU attempts to leverage Teespring's purported knowledge of past alleged infringements to claim that Teespring was obliged to stop all *future* infringements and counterfeits. (Am. Compl., ¶ 35.) OSU alleges that Teespring is "aware" that its Sellers are creating infringing and counterfeit designs. (Am. Compl., ¶ 58.) Because Teespring is "aware" of infringing activity, OSU contends, Teespring is liable for contributory infringement by continuing to provide online tools for persons to create infringing and counterfeit designs. (*Id.*, ¶ 59.)

OSU's allegations that Teespring is generally "aware" that its website is being used to infringe are not sufficient to state a claim for contributory infringement. OSU must allege either intentional inducement or specific instances of actual infringement and a failure to act by Teespring. OSU has done neither. The only specific instances of alleged infringement OSU has referred to concern campaigns that Teespring either took down immediately upon notice (*see* Am. Compl., ¶ 35 & <u>Exh</u>. <u>G</u>) or that OSU failed to notify Teespring about. Accordingly, Count III for contributory infringement should be dismissed for failure to state a claim upon which relief may be granted.

## IV. <u>CONCLUSION</u>

For at least the foregoing reasons, Defendant Teespring, Inc. respectfully requests that this Court grant its motion and dismiss this case entirely. To the extent the Court declines to dismiss the entire case, the Court should dismiss Count III and transfer the remaining case to the District of Rhode Island.

/s/James D. Colner
_____
Craig M. Scott (Admitted *Pro Hac Vice*)
Anastasia A. Dubrovsky (Admitted *Pro Hac Vice*)
Scott & Bush Ltd.
One Turks Head Place, Fourth Floor
Providence, RI   02903
(401) 865-6035 Phone
(401) 865-6039 Fax
cscott@scottbushlaw.com
adubrovsky@scottbushlaw.com

James D. Colner (0012376)
Shumaker, Loop & Kendrick, LLP
41 South High Street, Suite 2400
Columbus, Ohio 43215
Phone: (614) 463-9441
Fax: (614) 463-1108
Email: jcolner@slk-law.com

Attorneys for Defendant Teespring, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on the 20th day of June, 2014, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/James D. Colner