IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| THE OHIO STATE UNIVERSITY | : | | |
| Plaintiff, | : | | |
| | : | Case No.: 2:14-cv-00397 | |
| | : | Judge Watson | |
| TEESPRING, INC. | : | Magistrate Judge Kemp | |
| Defendant. | : | | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

The motive of Defendant Teespring, Inc. ("Teespring") in filing this frivolous and meritless Motion to Dismiss or Transfer Venue is transparent: It does not want to be bound by the controlling law in this district, which was set forth by Judge Frost earlier this year in *The Ohio State University v. Skreened Ltd., et al.*,109 USPQ2d 1448 (S.D. Ohio 2014). Plaintiff The Ohio State University ("Ohio State") has sued Teespring for engaging in the same conduct and using the same business model as Skreened, namely, helping its customers create counterfeit Ohio State apparel, actively engaging in having that apparel printed, marketed and promoted on the internet, and selling and shipping the counterfeits to purchasers who wish to display their affinity for Ohio State. As with Skreened, Teespring's business model will destroy Ohio State's licensing program built up over the past 40 years, destroy Ohio State's valuable trademarks and help third parties create, promote, market and sell counterfeits. The suggestion that this business model is something new and original is nonsense. Rather, it is just an update of the "old-school" counterfeiters who print counterfeit Ohio State t-shirts in their basement and sell them at the corner of Lane and High Streets on Saturday afternoons in the Fall. The mere fact that Skreened, Teespring (and several other competitors) faciliate their counterfeiting of Ohio State

1

apparel by using the internet does not make their activity beyond the reach of the Lanham Act. Teespring is simply a better funded counterfeiter than its compatriots selling similar apparel at Lane and High.

Teespring facilitates every aspect of its on-demand t-shirt printing business. It provides its customers with online design tools to help them create and upload designs, it allows customers to start a "campaign" on the teespring.com website and set goals for the amount of shirts they want to sell. Orders are then placed through Teespring, and Teespring collects the money from the purchasers. Once the goal is met, Teespring arranges for the shirts to be manufactured and Teespring ships the counterfeit merchandise to the buyers. Teespring's founder, Walker Williams, described the process in an interview with *Forbes* magazine:[1]

> We've got to quote the job correctly without any human interacting with the order (or it would be impossible to scale), collect customer information and allow time for corrections to be made, get the correct blank products to the correct printer, deliver shipping labels, deliver artwork in a vector format and make sure the products are printed and individually fulfilled in under a week (so the order arrives 7-14 days after the campaign ends). If any one of these components goes wrong, we end up with a late package and an unhappy customer.

Despite this high level of involvement, Teespring does not think it should be responsible for selling, offering to sell, manufacturing and/or shipping counterfeit and infringing OSU t-shirts – in fact, it asserts that Ohio State cannot even state a legal cause of action against it and has moved to dismiss Ohio State's Complaint.

Teespring asserts two bases for its Motion to Dismiss. The first is that pursuant to F.R.C.P. 12(b)(7), Defendant's "Sellers" are indispensable parties to this action because they are the designers of the shirts at issue, and while these Sellers are "necessary to the adjudication of this action," they "cannot all be made parties hereto because the Court lacks personal jurisdiction

---

[1] The *Forbes* article is attached as Exhibit C to the Complaint herein.

over at least several of them" (Motion to Dismiss at 1). This claim is unfounded, and for good reason: Under Teespring's new "theory", any counterfeiter could insulate himself from the reach of U.S. courts by simply purchasing product from Chinese suppliers who are not subject to jurisdiction in the United States and claiming that the manufacturer is an indispensable party. That is not the law, and any research on the law would have resulted in Teespring not filing a motion on these grounds.

As the Sixth Circuit said in *Basketball Marketing Co., Inc. v. Upscale Entertainment,* 227 Fed. Appx. 492, 2007 WL 1892073 (6th Cir. 2007) "Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue **as many or as few of the alleged wrongdoers as he chooses.**" (Emphasis added). Teespring's contractual relationships with its customers do not change the law. This Circuit, as does every other circuit, has long recognized that liability for trademark infringement is joint and several, and cannot be avoided by contract. Teespring's attempt to persuade this Court otherwise is meritless.

Teespring's second suggested ground for dismissing this case is equally frivolous, namely, pursuant to F.R.C.P. 12(b)(6), Ohio State "has not and cannot allege the facts necessary to state a claim that Teespring is liable for contributory infringement." Teespring asserts that Ohio State has alleged only that Teespring had *general* knowledge that its platform could be used for infringing activity, which it claims is insufficient to state a claim for contributory infringement under *Coach, Inc. v. Goodfellow,* 717 F.3d 498 (6th Cir. 2013). According to Teespring, "[l]iability arises only where a party knew or had reason to know of *specific* instances of infringement and failed to act. . . OSU has made no allegation and cannot make any such allegation since Teespring responded fully to each particular claimed infringement by OSU."

3

The public statements by Teespring's founder set forth above clearly show that the company's business operations are comprised of multiple activities involving the solicitation and development of counterfeit designs, manufacturing of the counterfeit goods, selling the counterfeit goods, shipping the counterfeit goods and advertising and marketing the counterfeit goods on Teespring's website, any of which constitutes contributory trademark infringement and counterfeiting. 15 U.S. Code § 1117 provides that counterfeiting occurs when there is use of a counterfeit mark "in connection with the sale, offering for sale, or distribution of goods". Furthermore, Ohio State has more than adequately alleged that Defendant is liable for contributory infringement under the likewise well-established law in this Circuit: the Complaint alleges that Ohio State had put Teespring on notice of specific acts of infringement and counterfeiting of Ohio State trademarks on the teespring.com website, and that Teespring nevertheless continued to supply its online services to its customers despite specific knowledge that those services facilitate trademark infringment. Accordingly, Defendant's Motion to Dismiss should be denied and Ohio State should be awarded its costs and fees for responding to this frivolous motion.

In the alternative, and in a last-ditch attempt to avoid the controlling law in this District, Teespring tells this Court that if the case should not be dismissed, this case should be transferred to the District Court in Rhode Island. However, Teespring makes no credible argument to support its blatant forum shopping, and can provide no counter-balancing factors that outweigh Ohio State's – an institution of the State of Ohio -- choice of forum in this District. Rather, as Judge Spiegel observed, "the Court cannot escape the concern that the instant motion is merely an attempt to forum shop. To be seeking a new venue just after this Court denied Defendants'

motions to dismiss simply raises this red flag." *US Ex Rel. Daugherty v. Bostwick Laboratories*, Case No. 1:08-CV-00354 (May 23, 2013, S.D. Ohio).

I. <u>Legal Standards</u>

A. 12(b)(7)

Rule 19 of the Federal Rules of Civil Procedure sets forth a three-step test for courts to use in determining whether an absent party must be joined or the case dismissed if that party cannot be joined. *School Dist. of City of Pontiac v. Secretary of U.S. Dept. of Educ.,* 584 F.3d 253, 302 (6th Cir. 2009). Under this test, the Court must first decide whether the absent party is required under Rule 19(a). *Id.* Second, if the party is required, then the Court considers whether joinder is feasible. Finally, if joinder is not possible, the equities should be weighed to determine if the action may proceed or must be dismissed. *Id.*

B. 12(b)(6)

The standard for evaluating a Motion to Dismiss under Rule 12(b)(6) is well-established, and was summarized by this Court in *In re Huntington Bancshares Incorporated Securities Litigation,* 674 F.Supp.2d 951, 956 (S.D. Ohio 2009): "A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal,* 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *BellAtl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955,167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955 (internal citations omitted)."

5

A court also must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir.2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998))." The court's role is limited to determining whether the plaintiff is entitled to move forward and offer evidence to support the claims alleged, not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

    C.  Transfer of Venue

As the Court noted in *Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952 (S.D. Ohio 2006), "The party moving for transfer of venue generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight. *See Nicol v. Koscinski,* 188 F.2d 537, 537 (6th Cir.1951)." Chief Judge Dlott stated in *Singh v. Insurance Company of the State of Pennsylvania*, (S.D. Ohio 2013), "In order for a transfer to take place, the Defendant must make a strong showing of inconvenience to wa*rrant upsetting the Plaintiff's choice of forum." Hobson v. Princeton-New York Investors, Inc*., 799 F. Supp. 802, 805 (S.D. Ohio 1992). Similarly, Judge Black stated in *The Proctor & Gamble Company v. Team Technologies, Inc.*, SD Ohio 2012 "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am.*, 574 F.3d 315, 320 (6th Cir. 2009). "The Court must give foremost consideration to the plaintiff's choice of forum and the balance must weigh strongly in favor of a transfer before the Court should grant a Section 1404(a) motion." *Western & Southern Life Ins. Co. v. Morgan Stanley Mortg. Capital, Inc.*, No. 1:11-cv-576, 2011 U.S. Dist. LEXIS 146213, at *11 (S.D. Ohio Dec. 20, 2011). "The

moving party bears the burden of showing the need to transfer venue." *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002).

In addition to the forum selection clause, the "district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, public interest factors of systemic integrity, and private concerns falling under the heading the interest of justice." *Kerobo v. Southwestern Clean Fuels Corp.,* 285 F.3d 531, 537-538 (6th Cir.2002). Ruling on discretionary transfer of venue motions requires a court to make a case-by-case evaluation of the particular circumstances at hand and consideration of all relevant factors. *See Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

II. <u>Argument</u>

    A. The sellers are not indispensable parties because liability in trademark infringement cases is joint and several.

Teespring's frivolous motion to dismiss pursuant to Rule 12(b)(7) is easily disposed of. The question for the Court is whether the presence of other parties—in Teespring's view, each of its *customers*—is required for just adjudication under Rule 19. In this case for trademark infringement, unfair competition and counterfeiting under the Lanham Act, Ohio State is not required to sue each of Teespring's customers in addition to Teespring.

The question Teespring would have this Court answer has long been settled. Liability for trademark infringement is analogous to any other tort action – all infringers are jointly and severally liable, and the plaintiff may choose whom to sue and is not required to join all infringers in a single action. See Wright, Miller & Kane, *Federal Practice and Procedure Civil* 3d § 1614; *Stabilisierungsfonds Fur Wein, et al. v. Kaiser Stuhl Wine Distributors Pty. Ltd., et al.,* 647 F.2d 200, 224 (D.C. Cir. 1981) (Ginsburg, J.)("Courts have long held in patent,

trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. See e.g. *Grocers Baking Co v. Sigler*, 132 F.2d 498, 502(6th Cir. 1942) ("Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit, commentary underscores, are not indispensable parties.")); see also *David Berg and Co. v. Gatto Intern. Trading Co*., 884 F. 2d 306, 311 (7th Cir. 1989) ("Because unfair competition and trademark infringement are tortious, the doctrine of joint tortfeasors does apply. . . . Every person actively partaking in, lending aid to, or ratifying and adopting such acts is liable equally with the party itself performing these acts."); accord, *Bauer Lamp Co. v. Shaffer*, 941 F.2d 306, 312 (11th Cir. 1991). See also J. Thomas McCarthy, McCarthy on Trademarks §25.23 (4th Ed. 2003).

Teespring cannot use its contracts with third parties to shield itself from tort liability to Ohio State. Teespring may have come up with a "genius idea" representing "the future of custom apparel" (Motion to Dismiss at 2), but when that "genius idea" essentially encourages and assists persons to engage in counterfeiting of Ohio State apparel, "genius" must cede to well-established law. As with Skreened, Teespring is engaged in a "carefully careless denial of the reality of the business in which Defendants are engaged and how the law intersects with that business." *The Ohio State University v. Skreened Ltd., et al.,* 111 USPQ2d 1448, 1459 (S.D. Ohio 2014).

B. Ohio State has adequately pled a cause of action for contributory infringement against Teespring under Sixth Circuit law.

Ohio State's allegations in the Amended Complaint regarding contributory infringement are as follows, and are consistent with the elements set forth by the Supreme Court and adopted by the courts in this district and the Sixth Circuit:

58. In view of Plaintiff's objections to Defendant about the infringement and counterfeiting of the Ohio State Trademarks, Defendant is aware that those persons it encourages to use Teespring's online design tools are creating infringing and counterfeit designs which Defendant Teespring is manufacturing, offering to sell and selling.

59. Defendant Teespring is liable for contributory trademark infringement through its actions of providing online tools for unknown third persons to create infringing and counterfeit designs, and for Teespring's acts of manufacturing, displaying for sale, selling and distributing t-shirts bearing such infringing and counterfeit designs.

The Supreme Court described the nature of a contributory infringement claim in *Inwood Laboratories Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982):

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.

*Id*. at 853–54

The Sixth Circuit noted in *Coach, Inc. v. Goodfellow,* 717 F.3d 498 (6th Cir. 2013), that "[a]lthough the Lanham Act refers only to direct trademark infringers, *Inwood* established that liability may also be imposed on those who facilitate the infringement." *Goodfellow,* 717 F.3d at 503. Moreover, while the defendant in Goodfellow (a flea market operator) claimed, as does Teespring in this case, that he took remedial measures once he was informed of the sale

of counterfeit items by some of his vendors, citing to Second Circuit's decision in *Tiffany (NJ), Inc. v. eBay, Inc.,* 600 F.3d 93 (2d Cir. 2010), the Sixth Circuit noted, "even if we consider all the evidence of remedial measures, it fails to undermine the district court's conclusion that Goodfellow engaged in 'ostrich-like practices.' Goodfellow continued to supply flea market resources to vendors with knowledge of and willful blindness toward ongoing infringing activities, thereby facilitating continued infringing activity. The facts are sufficient to support a finding of contributory liability under the prevailing standards established by the Supreme Court as applied in other circuits, authorities which we find persuasive." *Goodfellow,* 717 F.3d at 505).

Proscribing this type of activity is not new law, nor is the Sixth Circuit's position unusual. Long ago, in *Stix Products v. United Merchants & Mfgrs* ,295 F. Supp 479 (SDNY 1968), the court found contributory infringers include "all those who knowingly play a significant role in accomplishing the unlawful purpose". As Professor McCarthy notes at §25:19, "the contributory infringement doctrine is not limited merely to acts of designedly furnishing dealers with a means for consummating fraud, but extends liability to acts which the defendant should have realized would create an opportunity for misuse of a trademark".

Thus, in *GEICO v. Google, Inc.,* 330 F. Supp 700 (E.D. Va 2004), the court found that "The claim that Overture monitors and controls the third-party advertisements is sufficient to plead the actual or constructive knowledge required to allege contributory infringement." Similarly, in *Rosetta Stone v. Google* 676 F. 3rd 144 (4th Cir 2012), the 4th circuit held that Rosetta Stone had stated a claim of contributory infringement against Google for allowing known infringers and counterfeiters to bid on Rosetta Stone's trademarks as keywords. Likewise, in *Louis Vuitton v. Akanoc Solutions .,*658 F. 3d 936, 943 (9th Cir 2011), the court held that an operator of an internet server was liable for contributory trademark infringement because it knew the websites it hosted on its servers sold counterfeit Louis Vuitton goods. The

court noted that defendants had control over both the services and the internet servers it provided the web sites - -just like Teespring's business. The court went on "The only intent required was evidence that defendants provided their services with actual or constructive knowledge that the users were engaging in trademark infringement. An express finding of intent is not required." *Vuitton* at 943.

As set forth in its Complaint, Ohio State contacted Teespring on multiple occasions to complain of infringing merchandise being sold on the Teespring.com website. Teespring responded by taking those items down[2] but just as the Sixth Circuit found in *Goodfellow*, it continues to supply its online services and marketplace to persons "with knowledge of and willful blindness toward ongoing infringing activities, thereby facilitating continued infringing activity."

Finally, while acknowledging that a person who facilitates infringing activity can be liable for contributory infringement, this Court has also recognized that liability often depends on factual matters that cannot be resolved on a motion to dismiss. In *Habeeba's Dance of the Arts, Ltd. v. Knoblauch,* 430 F. Supp. 2d 709 (S.D. Ohio 2006), the Court noted:

> Whether the YWCA is liable for contributory infringement depends on certain factual matters that cannot be resolved on a motion to dismiss. In *Fonovisa* and *Hard Rock Café*, the courts stated that liability hinges on how substantially involved the operators were in the businesses of the infringing vendors, including whether the operators participated in advertising and selling tickets, their degree of supervision, and whether they shared in ticket sale proceeds. The YWCA raises some of these factual issues in its motion to dismiss, alleging that it did nothing more than "rent" the space to Knoblauch, that it did not assist in the distribution of Knoblauch's advertising and registration forms, and that the YWCA did not have the power to stop the infringing conduct from taking place. Though the YWCA may ultimately be correct, these matters are outside of the complaint and cannot be considered on a motion to dismiss. ***The***

---

[2] In its Motion to Dismiss, Teespring refers to its "notice-and-takedown" provisions, which appear to be based on the takedown safe harbor provided to ISPs in the DMCA, 17 U.S.C. §512( c)(1). However, the DMCA has never been applied to cases of trademark infringement, by analogy or otherwise.

> *complaint states a claim for contributory infringement and Plaintiff is entitled to discovery regarding these issues.*

*Id.,* 430 F.Supp. at 715 (emphasis added).

### C. There is no legitimate basis to transfer this case to Rhode Island

While it is understandable that Teespring would prefer not to have its activities judged under the controlling law in the District, a plaintiff's choice of forum is entitled to considerable weight. This Court has found that the interest of plaintiffs in their choice of forum is stronger when plaintiffs are residents of the forum they choose. *Max Rack, Inc. v. Hoist Fitness Sys., Inc.*, No. 2:05-CV-784, 2006 WL 640497, at *3 (S.D. Ohio March 10, 2006). Plaintiff, The Ohio State University is an institution of the State of Ohio, located in Columbus, Ohio. Indeed, as noted by the Court in *AC Strip, Receiver For CBCA Administrators, Inc. v. The Loge Group*, Case No. 2:10-cv-081 (August 19, 2010, S.D. Ohio)

> [T]he Court generally places "the burden of establishing the need for a transfer of venue" on the moving party. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849-50 (S.D. Ohio 2007) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002)). Although it is not a dispositive factor, the Court must give Plaintiff's choice of forum weight. *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998); see also *Levy v. Cain, Watters & Assocs., PLLC,* 2010 WL 271300 at *9 (S.D. Ohio 2010) ("[I]t has long been held that the plaintiff's choice of a forum is entitled to considerable weight . . . ."). Accordingly, "`unless the balance is strongly in favor of the defendant, **the plaintiff's choice of forum should rarely be disturbed**.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)) (emphasis added).

1. The private interests of the parties do not favor transfer of this case to Rhode Island

Two of the factors that should be considered by the Court in determining whether to transfer venue are the location of the witness and the documents. With respect to the location of the documents, it bears noting that TeeSpring began its business operations in October 2012. The Ohio State University was founded in 1870.

All of Plaintiff's employees who are potential witnesses are employees of the State of Ohio, and all are located in and residents of the State of Ohio. In addition to the Ohio State employees in the Trademark and Licensing Department, most of the voluminous records regarding the licensing of and use of specific Ohio State trademarks are paper records maintained in Columbus, Ohio. As the Plaintiff, Ohio State has the burden of establishing its use of various trademarks involved in this litigation from the time they were first used. Those voluminous records, in some cases going back decades, are mostly in paper and all are housed in Ohio State's archives in Columbus, Ohio, and in the custody of Ohio State's archivists, who are residents of Columbus, Ohio. The vast majority of Ohio State's licensed clothing is sold by retailers located in the State of Ohio who will be witnesses to that effect. Those retailers will testify that the sale of counterfeit Ohio State apparel by defendants has harmed their legitimate Ohio based businesses. The vast majority of prospective purchasers of licensed Ohio State apparel are residents in the State of Ohio who will be witnesses.

On the other hand, Teespring states that its employees are located in Rhode Island and its records are in that state. However, given that Teespring is an online business that has only been in existence since 2012, the volume of its records would be considerably smaller than Ohio State's records and they would largely be in electronic form. Moreover, "the convenience of witnesses who are employees of a party is generally not given as much consideration as is given to other witnesses." *Fusi v. Emery Worldwide Airlines, Inc.,* No. C-3-07-039, 2007 WL 4207863, at *6 (S.D. Ohio Nov. 23, 2007) (citing *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.,* 478 F.Supp.2d 983, 991 (S.D. Ohio 2007)). Because the majority of the witnesses Teespring contends will be inconvenienced by an Ohio forum are, in fact, their own employees, this Court should find that this factor does not weigh strongly in favor of transfer.

Finally, "[t]ransfer is inappropriate if it merely shifts the burden of inconvenience." *AC Strip, supra,* citing *Twenty First Century Commc'ns, Inc. v. TechRadium, Inc*., No. 2:09-cv-1118, 2010 WL 3001721, at *3 (S.D. Ohio 2010)(Frost, J.) Because various factors support Plaintiff's choice of forum, and because Teespring has simply not demonstrated that Rhode Island is clearly more convenient, this Court should not disturb Plaintiff's selection of Ohio in which to bring its lawsuit. Judge Spiegel noted in *US Ex Rel. Daugherty v. Bostwick Laboratories*, (SD Ohio 2013), "as this Court has previously noted, 28 U.S.C. § 1404 does not allow for transfer to a forum that is equally convenient or inconvenient, nor does it allow for transfer if that transfer would only shift the inconvenience from one party to another." *United States ex rel. Roby v. Boeing Co.,* No. 1:95-cv-375, 1998 WL 54976, at *1 (S.D. Ohio Jan. 21, 1998); see also *Lassak v. Am. Def. Sys*., No. 2:06-cv-1021, 2007 WL 1469408, at *2 (S.D. Ohio Nov. 28, 2011) (finding "some inconvenience to one or more parties will exist no matter which forum is chosen" and, therefore, "if a change of venue serves merely to shift the inconvenience from the plaintiff to the defendant, a change of venue is improper"). *United States ex rel. Roby v. Boeing Co.,* 1998 U.S. Dist. LEXIS 22456 at *5 (S.D. Ohio Jan. 21, 1998).

       2.      <u>The public interest strongly favors the Southern District of Ohio</u>

Teespring argues that the public interest favors Rhode Island because there is no connection between the cause of action and the Southern District of Ohio. However, this court can take judicial notice that a significant if not overwhelming majority of the counterfeit Ohio State products sold by Teespring would be offered to and/or sold and shipped to residents of the State of Ohio who are Ohio State Buckeye fans, and not residents of the State of Rhode Island. Again, Judge Graham stated:

Because at least part of the events giving rise to Plaintiff's claims occurred in

14

Ohio, the Court is not persuaded this factor assists Defendants to overcome their burden. See *Pearle Vision, Inc. V. N.J. Eyes, Inc.,* No. 1:08-CV-190, 2009 WL 73727, at *9 (S.D. Ohio Jan. 6, 2009) ("Even if a more substantial part of the events . . . might have occurred in the [Defendants' preferred district], this is not a dispositive factor here when examined in the totality of circumstances.").

In *AC Strip*, this Court also considered the Public Interest Factors of Systematic Integrity. "Public interest factors include the issues of congested dockets, concerns with resolving controversies locally, and, in diversity cases, having the trial in a forum that is at home with the state law that must govern the case." This Court can take judicial notice that over the past fifteen years, The Ohio State University has acted to protect its trademarks in this Court against infringers and counterfeiters who violated the law and sought to make a profit off of Ohio State's intellectual property. As noted, it is undisputed that a majority of the sales of legitimate (and most likely counterfeit) Ohio State apparel is directed to and sold to persons in the State of Ohio. Plaintiff submits that such cases clearly fall within this Court's pronouncement to "resolve controversies locally".

Finally, this Court stated in *AC Strip*, "It would be against the public interest to force an Ohio corporation to try any case brought against it in any one of the fifty states solely because that is where the defendant is located." Plaintiff submits that it would be against the public interest to force an institution of the State of Ohio located in Columbus to try any case involving third party counterfeiting its intellectual property in any one of the fifty states, including Rhode Island, solely because that is where the defendant is located.

III. Conclusion

As noted by Judge Frost in *Skreened,* "Selling knockoffs is selling knockoffs, regardless of who suggested you sell them, regardless of how many other infringing products you decide not to sell, and regardless of how much of a hassle it is to comply with the law." *Skreened, supra,* 111 USPQ2d at 1159. Teespring is no different. It provides its customers with the tools to create infringing and counterfeit products, it processes the orders "without any human interacting with the order", and it attempts to evade its liability for contributory infringement by claiming that it takes down infringing shirts when it is notified by the trademark owner. "Ostrich-like" business practices are not a defense to trademark infringement in this District. Clearly, Ohio State has adequately pled a cause of action for contributory trademark infringement for which, if proven, Teespring would be joint and severally liable. Moreover, Teespring cannot show any legitimate reason that Rhode Island would be a preferable forum for adjudicating this matter. Accordingly, the Motion to Dismiss should be denied and venue should remain in the Southern District of Ohio.

Respectfully submitted,

Michael DeWine
Ohio Attorney General

_____
Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True   (0046880)
DREITLER TRUE LLC
19 East Kossuth Street
Columbus, OH  43206

(614) 449-6677 (telephone)

jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com

Special Counsel for Plaintiff
The Ohio State University

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 23rd day of December, 2014, a copy of the foregoing was filed with the Clerk of Court electronically. Notice of this filing will be sent to all registered parties by operation of the Court's CM/ECF system.


/s/ Mary R. True
Mary R. True