IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE OHIO STATE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>TEESPRING, INC.,<br><br>Defendant. | Case No. 2:14CV397<br>Judge Watson<br>Magistrate Judge King<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF DEFENDANT
TEESPRING, INC.'S MOTION TO DISMISS OR TRANSFER VENUE**

On June 20, 2014, Teespring, Inc. ("Teespring") filed a Motion to Dismiss or Transfer Venue of this case to the District of Rhode Island, where Teespring is headquartered (the "Motion"). [Dkt. No. 12.] The Ohio State University ("OSU") delayed responding, insisting it needed discovery from Teespring to meet the merits of the Motion. Teespring responded to written discovery. Teespring also made a witness available for deposition, but OSU canceled it at the last minute. Six months after the filing of the Motion, OSU filed its Memorandum in Opposition to Motion to Dismiss or Transfer Venue (the "Opposition").

OSU claims in the Opposition that the Sellers are not indispensable because, as alleged joint tortfeasors with Teespring, OSU could have sued, but elected not to sue, the Sellers. OSU frames the issue incorrectly. OSU seeks injunctive relief against Teespring and the Sellers. Because the Sellers are not named parties, the Court cannot accord complete relief unless they are joined. The Sellers, however, cannot be joined in this forum but can be joined in the District of Rhode Island. Accordingly, this Court should dismiss this case pursuant to Rule 12(b)(7).

Count III should be dismissed for an additional reason. OSU has not pled a legally cognizable cause of action for contributory infringement. Although the parties cite substantially the same precedent, OSU misstates the law and misreads its own allegations. For contributory infringement to lie, Teespring must have more than general knowledge that its website can be used to sell allegedly infringing items. Teespring must have failed to remove specific, known infringements—allegations that OSU never pled. Under Rule 12(b)(6), the Court should dismiss Count III of the First Amended Complaint.

If the Court declines to dismiss this case, in whole or in part, the case should be transferred to the District of Rhode Island. OSU proffers nothing to rebut Teespring's evidence that Rhode Island is the appropriate forum for this dispute. OSU relies solely on "facts" that are not supported and are not properly the subject of judicial notice. For the reasons set forth herein and in Teespring's Motion, this action should be transferred.

Finally, in deciding the Motion, the Court should reject OSU's attempts to conflate this case with the Court's *Skreened* decision. The legal issues and facts implicated in the Motion differ substantially from that case in several respects.

A. **Joint Tortfeasor Liability Does Not Defeat the Sellers' Indispensability**

This case should be dismissed under Rule 12(b)(7) because OSU failed to join Teespring's Sellers, who are necessary parties under Rule 19, but cannot be joined. (*See* Motion at 6-11.) Although OSU refers generally to the three-step test under Rules 12(b)(7) and 19, OSU fails to analyze the relevant factors. Instead, OSU makes the circular argument that the Sellers are not indispensable parties because OSU chose not to sue them even though it could have. OSU misconstrues Teespring's argument and ignores its own pleading.

2

The Sellers are indispensable because OSU implicated them in this case. Specifically, OSU made the Sellers indispensable parties by requesting relief with respect to them. *See Invesco Institutional (N.A.), Inc. v. Paas*, 2008 U.S. Dist. LEXIS 90891, 39, 2008 WL 4858210 (W.D. Ky. Nov. 6, 2008) ("The relief Plaintiff seeks implicates [the non-party] in such a way to make it an indispensable party.") OSU seeks a broad permanent injunction against the Sellers of the accused campaigns. (FAC, Request for Relief No. 1.) The Court cannot grant the requested relief without making the Sellers parties to this action. Since the Court lacks personal jurisdiction over most of the Sellers, they cannot all be made parties. (*See* Motion at 6-11.)

OSU misconstrues Teespring's position. Teespring is not arguing that the Sellers are indispensable simply because they may be directly or contributorily liable for infringement, either alone or jointly with Teespring. If that were the case, then OSU would be correct that the Sellers' status as potential joint tortfeasors alone does not make them necessary parties. *See, e.g., PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 204 (6th Cir. 2001). The Sellers are indispensable because OSU seeks remedies against them, and that remedy cannot be effectuated in their absence. (*See* Motion at 6-11.) OSU's failure to name the Sellers directly is not dispositive as OSU suggests; OSU cannot disregard the relief it seeks in the First Amended Complaint.

OSU mocks Teespring's argument by positing that, under Teespring's "theory," any alleged counterfeiter could "insulate himself from the reach of U.S. courts" by contracting with Chinese suppliers not subject to jurisdiction in the United States and then arguing they are indispensable parties. (Opp. 3.) As Teespring laid out step-by-step in its Motion (at p. 10), the final factor the Court should consider prior to dismissing a case for nonjoinder under Rule 19(b) is whether the plaintiff would have an adequate remedy if the action were dismissed. In OSU's

foreign supplier example, if the suppliers are not subject to United States jurisdiction, the plaintiff would not have an adequate remedy. Thus, a court likely would not dismiss the case.

Here, OSU has an adequate remedy. OSU has asserted federal causes of action (and state claims that the federal courts may exercise supplemental jurisdiction over) that may be brought in the District of Rhode Island, and Teespring is subject to personal jurisdiction in the District of Rhode Island, as are the Sellers. (*See* Motion at 11.) OSU fails to refute this, and most of the other factors justifying dismissal. For the numerous unrebutted reasons set forth in the Motion, the Court should dismiss this case.

**B.** **OSU Misconstrues its Own Contributory Infringement Allegations**

"Contributory infringement doctrine does not impose a strict liability standard." *Coach, Inc. v. Sapatis*, 2014 U.S. Dist. LEXIS 87832, 21 (D.N.H. 2014). Under settled precedent of the United States Supreme Court and several Circuit Courts of Appeals, including the Sixth Circuit, to state a claim for contributory infringement, a plaintiff must allege facts sufficient to demonstrate, if proven, that the defendant "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982); *see also Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013); *1-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1253 (10th Cir. 2013); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). In *Rosetta Stone*, a case relied on by OSU (Opp. at 10), the Fourth Circuit stated:

> It is not enough to have general knowledge that some percentage of the purchasers of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service to "identified individuals" that it knows or has reason to know are engaging in trademark infringement.

*Rosetta Stone Ltd.*, 676 F.3d at 163 (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984)); *see also eBay*, 600 F.3d at 107 ("For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.")

OSU relies on much of the same law as Teespring, but wholly ignores the principle that generalized knowledge that infringement may occur is insufficient to establish contributory infringement. OSU argues that Teespring's "business operations" involve the "solicitation and development of counterfeit designs" and manufacture, marketing, advertising and sale of counterfeit goods. (Opp. at 4.) Because, OSU claims, OSU put Teespring "on notice of specific acts of infringement," but Teespring "nevertheless continued to supply its online services" despite knowledge "that those services facilitate trademark infringement," it has stated a claim for contributory infringement. (*Id*.) Importantly, OSU expressly acknowledges that Teespring removed all specific alleged infringing campaigns upon OSU complaining of them. (*Id*. at 11.) Accordingly, when it refers to Teespring supplying its "services," OSU means Teespring's "services" generally and not with respect to the accused campaigns in this case.

OSU's allegations follow precisely the "strict liability standard" that numerous Courts have rejected. "A defendant has no obligation under contributory-infringement doctrine to stop a practice…simply because the practice might be exploited by infringers." *1-800 Contacts, Inc.*, 722 F.3d at 1253 (citing *Inwood*, 456 U.S. at 854 n.13). "[O]therwise the defendant could not halt the infringement without also stopping perfectly proper conduct—throwing the baby out with the bath water, so to speak." *Id*. To satisfy *Inwood*'s "knows or has reason to know" requirement, OSU must plead that Teespring "knew or had reason to know of specific instances

5

of actual infringement beyond those that it addressed upon learning of them." *eBay*, 600 F.3d at 107. Nowhere in the First Amended Complaint has OSU done that. Its allegations refer solely to Teespring operating a business that OSU claims creates that *possibility* that Sellers could create designs that infringe one or more of OSU's trademarks. (FAC, ¶¶ 58-59.) This is not enough to state a contributory infringement claim.

Discovery cannot cure the defects in OSU's First Amended Complaint. OSU focuses on various remedial measures that certain courts have found insufficient to defeat claims of contributory infringement. OSU suggests that it is entitled to discovery concerning Teespring's alleged facilitation of infringement through its business model. Had OSU alleged that Teespring failed to remove purportedly infringing campaigns of which it had knowledge, the contributory infringement inquiry would turn to what remedial measures Teespring undertook with respect to those campaigns. That, however, is not what OSU claims. OSU acknowledges that the specific alleged infringements were removed from Teespring's site. Whatever remedial measures Teespring may have taken with respect to other campaigns are irrelevant to whether OSU has pled adequately contributory infringement with respect to OSU's trademarks. Count III should be dismissed.

C.  **OSU Submits No Evidence Suggesting this Court Should Decline to Transfer**

OSU largely ignores the transfer factors and, to the extent it addresses any, presents broad assumptions rather than evidence. With respect to the private factors, OSU focuses solely on the location of witnesses and documents. OSU takes a scattershot approach of naming various sources of evidence without tying them to anything it must prove. In the process, OSU overstates what evidence it will present at trial. For example, OSU claims that "prospective purchasers" of licensed OSU apparel will be witnesses. (Opp. at 13.) OSU fails to explain how

such testimony would be relevant and admissible. If proffered to show likelihood of confusion, OSU cannot credibly suggest that it will present individuals rather than an expert survey, which is "routine" in trademark litigation. *See* Shari Seidman Diamond, *Reference Guide on Survey Research,* within the *Reference Manual on Scientific Evidence,* 235 (2d ed. Fed. Judicial Ctr. 2000).

Moreover, OSU's claims concerning its sources of proof are not supported. OSU contends that the "vast majority" of OSU's licensed clothing is sold by retailers located in Ohio, and the "vast majority" of prospective purchasers of licensed apparel are residents of Ohio. (Opp. at 13.) OSU provides no evidentiary support for such allegations. Later, when addressing the public factors, OSU states that the Court can take judicial notice of the fact that a "significant if not overwhelming majority" of alleged counterfeit items sold by Teespring would be shipped to residents of Ohio. (Opp. at 14.) OSU does not otherwise address the public factors for transfer.

This Court cannot take judicial notice of these alleged "facts." The Court can only take judicial notice of facts: (1) that are "generally known within the trial court's territorial jurisdiction"; or (2) that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). Teespring is not aware of any source of this information, and OSU has not presented any. Nor are the alleged facts "generally known." Indeed, there is some evidence to the contrary. At least two of the allegedly infringing designs are targeted to OSU fans located in the State of Texas. (FAC, ¶ 37.) Further, the Sellers at issue here are far-flung, residing in several states, including Tennessee, Arizona, California and Minnesota. (Daft Aff., ¶ 22.) Weighing all the factors, if this case is not dismissed, the Court should transfer it to the District of Rhode Island, as discussed more fully in Teespring's Motion.

### D. The Summary Judgment Decision in *Skreened* is Not Material to Any Issue this Court Must Decide

OSU touts this Court's summary judgment decision in *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014) as "controlling law in this district" (Opp. at 1) to imply that the case altered the landscape of trademark law in the Southern District of Ohio. But *Skreened* did not change existing law or introduce any new law. The Court applied the facts of that case to longstanding trademark and unfair competition principles. As discussed below, those facts differ materially from this case. The *Skreened* decision also did not concern a motion to dismiss or questions relating to contributory infringement, Rules 12(b)(7) and 19 or transfer of venue. Nevertheless, OSU repeatedly superimposes facts from *Skreened* onto Teespring. The Court should disregard OSU's attempts to apply these disparate facts to this case in lieu of developing and presenting evidence specific to Teespring.

The evidence presented in *Skreened* demonstrated that Skreened had undertaken "ostrich-like business practices" with respect to infringement, which the Court also referred to as "a carefully careless denial of the reality of the business in which Defendants are engaged and how the law intersects with that business." *Skreened Ltd.*, 16 F. Supp. 3d at 917. Specifically, although Skreened was aware that its site could be, and was, used to create, market and sell shirts bearing infringing designs, Skreened failed to implement a comprehensive and effective filtering system to either prevent infringing items from being marketed and sold or to address alleged infringements once listed on its website. *See id.* at 916. Skreened had no written guidelines for "dealing with infringement issues." *Id.* at 917. Moreover, Skreened tasked only one employee with reviewing potential infringements, but he was hired to work in Skreened's warehouse. (*Id.*) There was "no evidence" he is "an attorney, attended law school, is a paralegal, or has any particular training or background in intellectual property." (*Id.*) Finally, despite "repeated

actual notice" that it was infringing OSU's trademarks, Skreened continued its infringement and never responded to OSU. (*Id.* at 921.)

In contrast, OSU concedes that Teespring immediately removed each allegedly infringing item of which OSU complained. (Opp. at 11.) Moreover, OSU has not rebutted or denied that Teespring has established numerous protocols—which Skreened never even attempted—to identify and remove allegedly infringing campaigns, such as development of a portal for intellectual property complaints with an expedited 24/7 review and response policy; implementation of a formal, comprehensive complaint submission policy for the benefit of rights holders; and retention of experienced trademark and copyright counsel to provide intellectual property legal advice and counseling, among many other examples. (Daft Aff., ¶ 12; *see also* Motion at 4-5.) Teespring's diligent efforts have resulted in hundreds of rejected, suspended and/or cancelled campaigns. (*Id.*, ¶ 13.) In short, far from operating under "a carefully careless denial" of "how the law intersects" with its business, Teespring, through the technology and best practices it has developed and continues to refine, has shown the opposite: that it well-understands how the law intersects with its business and has taken great pains to comply with the mandates of *Inwood* and its progeny.

And these protocols are not abstractions, promoted only to present the illusion of compliance with the law. Teespring follows them in practice, as OSU learned and has acknowledged. In January, 2014, when OSU identified nine allegedly infringing campaigns, Teespring responded in less than 24 hours to remove the campaigns. (FAC, ¶ 35 & Exh. F.) OSU appeared satisfied, as OSU never again contacted Teespring about the nine complained-of campaigns or submitted any additional complaints or inquiries concerning any other campaigns. (Daft Aff., ¶ 15.) For these numerous reasons, the more apt factual comparison to Teespring is

9

eBay, as discussed more fully in Teespring's Motion (at 17-20), among other applicable cases. *See, e.g., Coach, Inc. v. Sapatis*, 2014 U.S. Dist. LEXIS 87832 (D.N.H. 2014) (denying pre-judgment attachment under contributory infringement because flea market owner employed "reasonable remedial measures" to combat known infringements).

OSU's attempts to conflate the facts in *Skreened* in lieu of presenting evidence specific to this case is particularly egregious considering that OSU delayed briefing for the express purpose of developing and submitting material evidence. As this Court is aware, shortly after Teespring filed the Motion, OSU sought to stay briefing and requested pre-briefing discovery. On June 30, 2014, Magistrate Judge Kemp allowed limited discovery "directed to the factual bases of the [M]otion [to Dismiss]." [Dkt. No. 13.] OSU propounded discovery, and Teespring responded consistent with the Magistrate Judge Kemp's Order. Teespring further agreed to a Rule 30(b)(6) deposition, which was scheduled for November 19, 2014. On November 13, 2014, Magistrate Judge Kemp issued an Order [Dkt. No. 22] outlining the permissible scope of the 30(b)(6) deposition.

On November 17, 2014, OSU unilaterally cancelled the deposition and never sought to reschedule. OSU also never advised Teespring or the Court that it was finished with pre-briefing discovery and that the Court should set a briefing schedule. Instead, on December 23, 2014, without prior notice and approximately five weeks after cancelling the deposition, OSU filed the Opposition. In the Opposition, despite delaying briefing for over six months—ostensibly so it could take discovery and present evidence in opposition—OSU neither rebuts Teespring's evidence nor submits contrary evidence. Instead, OSU wrongly attributes the *Skreened* facts to Teespring. The Court should reject these facts not at issue here.

10

**E.     Conclusion**

For at least the foregoing reasons and the reasons set forth in its Motion to Dismiss or Transfer, Defendant Teespring, Inc. respectfully requests that this Court grant its motion and dismiss this case entirely. To the extent the Court declines to dismiss the entire case, the Court should dismiss Count III and transfer the remaining case to the District of Rhode Island.


Dated: January 9, 2015                    /s/ Byron L. McMasters
                                          Craig M. Scott (Admitted *Pro Hac Vice*)
                                          cscott@hinckleyallen.com
                                          Byron L. McMasters (Admitted *Pro Hac Vice*)
                                          bmcmasters@hinckleyallen.com
                                          Anastasia A. Dubrovsky (Admitted *Pro Hac Vice*)
                                          adubrovsky@hinckleyallen.com
                                          **HINCKLEY, ALLEN & SNYDER LLP**
                                          50 Kennedy Plaza, Suite 1500
                                          Providence, RI 02903
                                          (401) 274-2000
                                          (401) 277-9600– Fax

                                          James D. Colner (0012376)
                                          Shumaker, Loop & Kendrick, LLP
                                          41 South High Street, Suite 2400
                                          Columbus, Ohio 43215
                                          Phone: (614) 463-9441
                                          Fax: (614) 463-1108
                                          Email: jcolner@slk-law.com

                                          Attorneys for Defendant Teespring, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed through the ECF system on the 9th day of January, 2015, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ Byron L. McMasters