IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE OHIO STATE UNIVERSITY | : |
| Plaintiff, | : |
| | : Case No.: 2:14-cv-00397 |
| | : Judge Watson |
| TEESPRING, INC. | : |
| Defendant. | : |

## STIPULATED FINAL CONSENT JUDGMENT AND PERMANENT INJUNCTION

Plaintiff The Ohio State University ("Ohio State") and Defendant Teespring, Inc. ("Defendant") (together, "the Parties") submit to the Court the following Stipulated Final Consent Judgment and Permanent Injunction. Capitalized terms not defined herein have the meanings defined in the Settlement Agreement entered by the Parties:

1. Plaintiff Ohio State is a public institution of higher education, with its main campus located in Columbus, Ohio, and regional campuses across the state. The University is dedicated to undergraduate and graduate teaching and learning; research and innovation; and statewide, national, and international outreach and engagement. Both undergraduate and graduate students also connect with the University and broader community through an array of leadership, service, athletic, artistic, musical, dramatic and other organizations and events.

2. Defendant is a Delaware corporation with an address of 3 Davol Square, Suite 300B, Providence, RI 02903.

3. This court has jurisdiction over this matter under 15 U.S.C. § 1125, 28 U.S.C. §1338 and 15 U.S.C. § 1114. Venue is proper in this Court under 28 U.S.C. § 1391(b), as

Ohio State's cause of action arose and Ohio State is being injured in this judicial district, and because Defendant has purposefully availed itself of the privilege of doing business in this forum.

4. Established in 1870, Ohio State has developed into one of the most well-respected institutions of higher learning in the country.

5. For more than 140 years, Ohio State has been actively engaged in providing undergraduate and graduate level educational courses and a broad array of programming and events, including sports events, recreation programs, and artistic, dramatic, and musical entertainment programming. The University also operates a medical center that has grown into one of the largest patient-care and medical-research centers in the nation. Ohio State licenses and markets various products and services, including publications, clothing, and other merchandise using the Ohio State Trademarks (defined below).

6. In connection with the activities and products described in the preceding paragraphs, Ohio State is the owner of, among others, the following federally registered trademarks:

a. "BUCKEYES" — registration number 1,152,683, registered April 28, 1981, to provide college sport exhibition events and recreation programs;

b. "BUCKEYES" — registration number 1,267,035, registered on February 14, 1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic toys, foam toys and equipment sold as a unit for playing a stick ball game; clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats, aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs, quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and folding seats for use by individuals in athletic stadiums and plaques; tote bags; pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles and key chains, all being made of precious metal; electric lamps; providing college level educational programs, sport exhibition events and recreation programs;

c. BUCKEYE DESIGN — registration number 2,437,954, registered January 2, 2001 for use on decals and stickers;



d. "OHIO STATE" — registration number 1,294,114, registered September 11, 1984 for providing college level educational programs, sport exhibition events, recreation programs, toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets, pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs, glasses, beverage container insulators, hassocks, bean bag leisure furniture, mirrors, and folding seats for use by individuals in athletic stadiums, tote bags, pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles, key chains and electric lamps;

e. "OHIO STATE" — registration number 1,152,682, registered April 28, 1981 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

f. "OSU" — registration number 1,121,595, registered July 3, 1979 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

g. "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains; pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure furniture, plaques, mirrors and folding seats for use by individuals in athletic stadiums; tumblers, cups, mugs, glasses and beverage container insulators; blankets, pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, and equipment-namely, bats and balls sold as a unit for playing a stick ball game; and : providing college level educational programs, sport exhibition events and recreation programs;



h. – registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.

i. "SCARLET & GRAY" – registration number 3,173,656, registered November 21, 2006 for hats, shirts, and t-shirts

j.  "OHIO STATE" – registration no. 2,094,602, registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters



k. Registration no. 4104956, registered February 28, 2012 for Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' apparel treated with fire and heat retardants, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Gloves for apparel; Infant wearable blankets; Scientific and technological apparel, namely, shirts, pants, jackets, footwear, hats and caps, uniforms; Viscous gel polymer sold as a component of finished custom cushioned footwear for non-orthopedic purposes and apparel; Wearable blankets in the nature of blankets with sleeves; Wearable garments and clothing, namely, shirts.

7. The certificates of registration are prima facie evidence of the validity of the registered trademarks, Ohio State's ownership of the registered trademarks, and Ohio State's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above. The registered marks depicted above in 6(a-j) are incontestable, which provides conclusive evidence of their validity under 15 US.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

8. In addition, Ohio State licenses and owns common law trademarks in the distinctive use of its school colors, scarlet and gray, in the initials "OSU" and cheer "Go Bucks".

9. For more than thirty-five (35) years Ohio State has used and licensed the use of the registered trademarks and the common law trademarks described above (collectively the "Ohio State Trademarks") on numerous and varied items, including clothing of all types, continuously and exclusively for identification with Ohio State and its academic, athletic and entertainment activities. The Ohio State Trademarks are strong and their respective reputation and goodwill have continuously grown and are now well known throughout the City of Columbus, the State of Ohio and the United States.

10. As a result of Ohio State's fame and its extensive use, advertising, and sale of goods and performance of athletic services bearing the Ohio State Trademarks, the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill.

11. Ohio State is the owner, via assignment, to the right of publicity of Ohio State's head football coach Urban F. Meyer ("Meyer Persona") under O.R.C. § 2741, et seq.

12. The Ohio State Trademarks and Meyer Persona have become and are now solely associated with Ohio State in the minds of consumers.

13. Ohio State approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing the Meyer Persona and its marks, and its trade dress to protect the tradition, prestige and goodwill associated with these marks, and Ohio State makes systematic efforts to safeguard the quality and integrity of the Ohio State marks, and the public assumes that Ohio State has approved, sponsored or

endorsed all products and services bearing its trademarks. Defendant is not and has not been licensed by Ohio State to use any of the Ohio State Trademarks on any products or services, including those depicted in paragraphs 14 and 15 (below).

14. Defendant is in the business of printing and selling t-shirts with a wide variety of designs. Defendant began operating its business in 2012. Defendant has online tools that have permitted its customers to create and upload infringing designs of Ohio State trademarks, start a "campaign" on Defendant's website and set goals of the amount of shirts they wish to sell. If the goal is met, Defendant had the infringing shirts manufactured and shipped to the customer.

15. Below are examples of infringing merchandise using the Ohio State Trademarks and/or Meyer Persona the that have been displayed and offered for sale on the Teespring.com website, compared to t-shirts offered for sale by Ohio State licensees:

**Teespring.com website**     **Ohio State licensee**

 




































16. Defendant has made unauthorized uses of the Ohio State Trademarks and/or the Meyer Persona that are commercial in nature and were intended to, and did, directly compete with the lawful publication, distribution, sale and advertising activities of Ohio State and its licensees to the detriment of Ohio State.

17. Prior to filing the lawsuit herein, Ohio State wrote to Defendant and asked it to cease its manufacture, advertising, marketing, display, distribution and sale of shirts

depicted in Paragraphs 14 and 15 (above).

18. Defendant has made unauthorized uses of the Ohio State Trademarks on clothing depicted in paragraphs 14 and 15 (above) that was likely to cause consumers to believe that Defendant and/or its products were sponsored, endorsed or affiliated with Ohio State, which is false.

19. Defendant has made unauthorized uses of the Ohio State Trademarks on clothing depicted in paragraph 14 (above) that constituted trademark infringement of the rights of Ohio State in its Ohio State Trademarks under 15 U.S.C. § 1114.

20. Defendant's use of the rights of publicity and persona of Ohio State's football coach Urban Meyer, as depicted in paragraph 14 (above) is a violation of the rights of publicity and persona of Urban Meyer under O.R.C.§ 2741.04, which rights have been assigned to Ohio State.

## PERMANENT INJUNCTION

This cause having come on for hearing and by and with the consent of the parties and the Court having been fully advised in the premises, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Defendant, its successors, assigns and all others that meet the requirements of Federal Rule of Civil Procedure 65(d)(2) are permanently enjoined from infringing, or falsely designating the origin of the Ohio State Trademarks, from using the Ohio State Trademarks or any other words or signs or symbols or device that suggest an affiliation, approval, license, connection, sponsorship or endorsement with Ohio State on goods in any way, and from injuring Ohio State's reputation; and

2. Defendant, its successors, assigns and all others that meet the requirements of Federal Rule of Civil Procedure 65(d)(2) are permanently enjoined from manufacturing, distributing, advertising, marketing, promoting or selling any product, including but not limited to clothing products, that use the Ohio State Trademarks or any other words or signs or symbols or device that suggest an affiliation, approval, license, connection, sponsorship or endorsement with Ohio State; and

3. Defendant its successors, assigns and all others that meet the requirements of Federal Rule of Civil Procedure 65(d)(2) are permanently enjoined from manufacturing, distributing, advertising, marketing, promoting or selling any product, including but not limited to clothing products, that use the rights of publicity and persona of Ohio State's football coach, Urban Meyer; and

4. Defendant, its successors, assigns and all others that meet the requirements of Federal Rule of Civil Procedure 65(d)(2) are permanently enjoined from using any of the Ohio State Trademarks or names or marks deceptively similar to the Ohio State Trademarks : (a) as metatags, directory names, domain names, other computer addresses or invisible data in connection with Defendant's website or mobile application; (b) on Defendant's or its Corporate Affiliates' social media accounts such as Twitter, Facebook, Pinterest; or (c) otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Ohio State with Defendant.

IT IS FURTHER ORDERED:

1. That this Court has jurisdiction over the parties and subject matter of this action.

2. That jurisdiction over this cause is retained by this Court for the sole purpose of enforcement of compliance with this Permanent Injunction and the Settlement Agreement entered by the parties for further orders and directions as may be necessary or appropriate from the construction and effectuation of this Final Consent Judgment and Permanent Injunction.

3. That except for the relief herein granted, the above identified civil action, including all claims, counterclaims, and affirmative defenses which Plaintiff or Defendant have, could have or should have accorded therein, are hereby dismissed with prejudice.

4. Plaintiff and Defendant have waived notice of the entry of this Final Consent Judgment and Permanent Injunction and the right to appeal therefrom or to test its validity.

5. The parties are to pay their own costs and attorneys' fees.

Dated: April 18, 2016

/s/ Michael H. Watson
United States District Court Judge

APPROVED AS TO FORM:

Michael DeWine
Ohio Attorney General


By: _____

Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True (0046880)
DREITLER TRUE, LLC
19 E. Kossuth St.
Columbus, OH  43206
(614) 449-6640
jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com

Attorneys for Plaintiff
The Ohio State University


By:_____


Attorney for Defendant
Teespring, Inc.